DONALD SCHEFFKI, Plaintiff-Appellee, v. THE CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY, Defendant-Appellant.

(No. 53961; ▮▮▮▮▮▮▮▮▮▮

First District—August 31, 1971.

Reedy, McDonnel & Summers, of Chicago, (Thomas J. McDonnell, of counsel,) for appellant.

Harold A. Liebenson and Harry J. Director, of Chicago, for appellee.

Mr. PRESIDING JUSTICE LEIGHTON delivered the opinion of the court:

This appeal is from an order which set aside a release and from an $85,000 judgment entered against the defendant. Two issues are presented. 1. Whether the evidence supports the order. 2. Whether the jury was properly instructed concerning the law regarding trespassers. A summary of the facts is necessary for an understanding of the issues.

On April 23, 1954, plaintiff, Donald Scheffki, then twelve years of age, and another boy, climbed the elevated embankment of defendant's railroad tracks at Bloomingdale and Marshfield Avenues in Chicago. While attempting to "flip" a boxcar in the middle of a moving train of freight,

plaintiff slipped, fell and the train passed over his legs, causing severe injuries. He was taken to a hospital where both legs were amputated above the knees. June 4, 1954, plaintiff's father, Clement J. Scheffki, as plaintiff's guardian, for the sum of $15,000 in full settlement, executed a release discharging the defendant "[o]f and from all claims and demands whatsoever, * * *" which the plaintiff had or may thereafter have for the injuries he received on April 23, 1954. The settlement was approved by the probate court of Cook County on the application of Clement Scheffki, pleadings and papers having been prepared by a lawyer selected and paid by the defendant.

Having attained his majority, plaintiff, on August 27, 1963, filed a three-count complaint alleging causes of action at law for damages in the sum of $400,000. In Count I, plaintiff alleged that the release which his father gave the defendant was obtained through a lawyer who was hired and paid by the defendant; that he now being an adult, disavowed and disaffirmed the release because it was "[p]rocured by a fraud upon the plaintiff and upon the probate court * * *." Plaintiff invoked the court's chancery jurisdiction, praying that the settlement made by his father be adjudged void and of no effect, and that the release be set aside. The trial court first heard Count I.

Clement Scheffki testified that he was a man with an eighth grade education. He said that two employees of the defendant visited him while his son was in the hospital and told him that they had heard of cases where defendant paid $5,000 and $10,000 for cases like the plaintiff's. Scheffki said that the two employees cautioned him not to get a lawyer because if he did, defendant would not have anything to do with him. He went on to testify that a short time after plaintiff was released from the hospital, a claims adjuster for the defendant telephoned him and told him to come and settle the plaintiff's claim with defendant right away. When Scheffki said he had no automobile, the adjuster came to his home and drove him and his wife to the company office. During their conversations, the adjuster told Scheffki that the settlement was to be for $15,000. In defendant's claims office, the adjuster told Scheffki that he "[t]hought I got a very good settlement, as long as I was willing to cooperate and didn't get any lawyer, why, he would have a lawyer for me and he'd take me to the lawyer, and we would get everything settled." Scheffki and his wife were taken to the office of a lawyer selected by defendant's employees.

There, according to Scheffki, the lawyer told him that the settlement was a very good one. Scheffki was given papers to sign. These were pleadings in a minor's settlement proceeding which was to be instituted in the probate court of Cook County seeking court approval of the settle-

ment. The lawyer, according to Clement Scheffki, told him that if he were asked, he was to tell the probate judge that he thought the settlement was a good one. That same afternoon, in a two minute hearing, an estate for the plaintiff was opened and Clement Scheffki was appointed plaintiff's guardian. The court approved the settlement and the release was signed by Clement Scheffki on behalf of plaintiff in return for the sum of $15,000 which was deposited in two trust accounts for the plaintiff.

Plaintiff's other witness was the lawyer. He testified that sometime before June 4, 1954, he received a telephone call from defendant's adjuster. Time records which refreshed the lawyer's recollection showed that the call was made on June 3, the day before Clement Scheffki and his wife were brought to the lawyer's office. The pleadings which Scheffki signed were prepared the day before they came to the office. The lawyer testified that his fees were paid by the defendant; and that all the facts he knew about the case he obtained from the file delivered to his office by defendant's adjuster. The lawyer testified that he did not handle personal injury cases for plaintiffs nor had he represented defendants in that kind of litigation. The lawyer admitted he made no independent investigation of plaintiff's case before the settlement was presented for approval to the probate court. He was shown the pleadings he prepared which reflected an error concerning the place of the accident in which plaintiff was injured. He testified that when he appeared before the probate judge he told the court his fees were being paid by the defendant; however, he did not tell the judge that he had been selected by defendant's employees to represent plaintiff's family.

The adjuster was called as a witness for the defendant. Neither in his direct nor in his cross-examination did he deny the statements attributed to him by Clement Scheffki. He testified that when he discussed the settlement of plaintiff's case with Scheffki, the latter appeared to know and understand what was said to him. He said that Clement Scheffki was sober, indicated an understanding of the nature of the proceedings instituted on behalf of his son and understood the settlement being made.

After hearing the witnesses, the trial judge ordered "[t]hat the release heretofore signed on June 4, 1954, by Clement Scheffki as Guardian of the Estate of Donald Scheffki, a minor, age twelve, releasing defendant Chicago, Milwaukee, St. Paul and Pacific Railroad Company, a corporation, is hereby vacated and declared a nullity." Thereafter, on an amended one-count complaint, plaintiff's cause of action for personal injuries was heard by a jury. The trial judge refused five instructions tendered by defendant. A $100,000 verdict in favor of plaintiff was re-

turned. The trial judge reduced it by the $15,000 which defendant had paid plaintiff's father on June 4, 1954. A judgment was entered against defendant in the sum of $85,000.

From these facts, defendant contends that the evidence fails to support the order which set aside the release. It argues that plaintiff did not prove fraud or mutual mistake and that plaintiff's father understood the transaction into which he entered with defendant, including the settlement negotiations, the probate proceedings and execution of the release. *Martin v. Po-Jo, Inc.*, 104 Ill.App.2d 462, 244 N.E.2d 851 is cited to support this position. However, this citation is not in point.

■■ Defendant's argument overlooks that this case involves a minor. It is the public policy of this state that rights of minors be carefully guarded. (*Muscarello v. Peterson*, 20 Ill.2d 548, 170 N.E.2d 564.) A minor who becomes a party to a litigation is a ward of the court, and a duty devolves upon that court to protect his rights. *Giles v. Kuennen*, 50 Ill.App.2d 389, 200 N.E.2d 143. *Martin v. Po-Jo, Inc.* did not involve the claim of a minor.

We attach significance to the testimony of the lawyer that he was selected and paid his fee by defendant, and trusted with defendant's file concerning plaintiff's case. The lawyer made no independent investigation of the accident in which plaintiff was injured; he relied on the representations of defendant as to the material facts which affected the rights of the parties involved. He never interviewed the plaintiff. He never advised plaintiff's father and mother concerning their rights with regard to the acceptance or rejection of the settlement suggested by defendant through its duly authorized representatives. Indeed, an important role of the lawyer was to see that plaintiff's father and mother signed the papers prepared the day before, and that the release for which defendant had bargained was executed before the $15,000 check was delivered to plaintiff's father. The lawyer never denied that he told plaintiff's father how to respond to the probate judge's inquiry concerning his satisfaction with the settlement into which he had entered on behalf of plaintiff. Defendant points to the lawyer's testimony that he had represented other minors at the request of defendant prior to the time he acted for plaintiff's family. It is insisted that in all these cases the lawyer represented the estate of the minor, not the defendant.

This construction of the relation between the parties is a sophism. Men of experience know that a railroad corporation will not trust its files to a lawyer who represents parties with interests adverse to it. It is more the truth to conclude, as apparently did the trial judge, that when defendant sent its file of plaintiff's case to the lawyer, it knew that the lawyer was going to protect its interests. Thus, the lawyer was acting

in the dual capacity of protecting the interests of defendant while appearing to act on behalf of plaintiff.

■■■ It is a firmly established rule, in this jurisdiction and in others, that a lawyer cannot represent conflicting interests nor undertake to discharge inconsistent duties, no matter how honest his motives or intentions. (*People v. Gerold*, 265 Ill. 448, 107 N.E. 165.) The rule is a rigid one. It is designed to prevent not only the dishonest practitioner from fraudulent conduct, but to preclude the honest practitioner from putting himself where he must choose between reconciling conflicting interests and protecting rights which he should represent. *Leman v. Steele*, 167 Ill. App. 190. Indeed, had the probate judge known the facts disclosed to the trial judge, the lawyer would have been removed by the probate court because he was representing 'adverse, conflicting and antagonistic interests in the same litigation, * * *' *Korman v. Matthias*, 32 Ill.App.2d 341, 177 N.E.2d 720, citing *Beerly v. The Wm. Meyer, Co.*, 332 Ill.App. 653, 75 N.E.2d 783. There need not have been actual fraud in the transaction. 46 Am.Jur.2d, Judgments, § 726 (1969). Therefore, it was not necessary that plaintiff prove fraud. It was enough that the evidence establish, as it did in this case, that defendant selected, employed and paid a lawyer who (regardless of the honesty of his purposes) represented conflicting interests when plaintiff's father gave defendant the release. It is as old as the Synoptic Gospels that "Ye cannot serve God and mammon." Ancient though it be, this moral finds expression in the principles of equity which the trial judge correctly applied when he set aside the release. See *In re Anderson's Estate*, 20 Ill.App.2d 305, 155 N.E.2d 839; *Missouri Pac. Ry. v. Lasca* (1909), 79 Kan. 311, 99 P. 616.

■■ Defendant's other question concerns five instructions which it requested the trial judge to give the jury. Three of these (defendant's Nos. 10, 11 and 12) were from Illinois Pattern Instructions. They defined a trespasser and the duties of defendant to trespassers on its land. The remaining two instructions (defendant's Nos. 13, 14) were taken from two decisions of Illinois reviewing courts. (*Briney v. Illinois Central*, 401 Ill. 181, 81 N.E.2d 866 and *Higgins v. B. & O. RR. Co.*, 16 Ill.App.2d 227, 147 N.E.2d 714.) None of these instructions referred to the fact that at the time of the accident plaintiff was a child.

Defendant argues that these instructions should have been given. It insists that, though he was a child, plaintiff was a trespasser on defendant's property. In support of this argument defendant relies on two decisions of the Illinois Supreme Court, each holding that children on a railroad company's property without its authority are trespassers to whom the company owed no duty except to avoid willfully or wantonly

causing them injury. Defendant complains that contrary to this rule of law, plaintiff's claim was submitted to the jury on the theory of *Kahn v. James Burton Company*, 5 Ill.2d 614, 126 N.E.2d 836 (a case which involved trespassing children), decided approximately a year after plaintiff was injured, and not applied to a moving railroad train until approximately nine years later.

*Kahn v. James Burton Company* did not declare a new rule of law. In a new context, it applied an old one. The Supreme Court, citing *Wagner v. Kepler* (1952), 411 Ill. 368, 104 N.E.2d 231, said, "It is recognized * * * that an exception exists where the owner or person in possession knows, or should know, that young children habitually frequent the vicinity of a defective structure or dangerous agency existing on the land, which is likely to cause injury to them because they, by reason of their immaturity, are incapable of appreciating the risk involved, and where the expense or inconvenience of remedying the condition is slight compared to the risk to the children." 5 Ill.2d 614, at 625. The court went on to say, citing *City of Pekin v. McMahon*, 154 Ill. 141, 39 N.E. 484, 27 L.R.A. 206 (decided in 1895), that it is for the jury to determine whether this exception applies. The issues formed by the pleadings made these rules applicable, even before *Kahn* was decided. For these reasons we conclude that the trial judge properly refused to give the five instructions.

The order and judgment are affirmed.

Order and judgment affirmed.

SCHWARTZ, and STAMOS, JJ., concur.