UNITED STATES of America, Appellee,

v.

Robert Barnwell CLARKSON, Appellant.

No. 77–2372.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 10, 1977.

Decided Dec. 15, 1977.

Edward V. Atkinson, Sumter, S. C., for appellant.

Eric Wm. Ruschky, Asst. U. S. Atty., Columbia, S. C. (Thomas E. Lydon, Jr., U. S. Atty., Columbia, S. C., on brief), for appellee.

Before RUSSELL, Circuit Judge, FIELD, Senior Circuit Judge, and WIDENER, Circuit Judge.

DONALD RUSSELL, Circuit Judge:

The petitioner appeals from a judgment of contempt. The contempt arose in connection with the prosecution of the petitioner, an attorney, under an indictment charging him with fraud in the preparation and filing of claims for tax refunds on behalf of numerous taxpayers. In interviewing and taking statements from the taxpayers whose claims for tax refunds were involved in the alleged fraud, the Government became aware that the petitioner was claiming to represent the concerned taxpayers, though obviously there could be a serious conflict between their interests and his own as a defendant in the criminal prosecution. It accordingly moved the district court for an order disqualifying the petitioner from acting as attorney for the involved taxpayers in connection with the tax investigation and enjoining him from interfering in any way with the agents of the Government in interviewing and securing statements from such taxpayers.[1] This motion came on for hearing on

---

[1] The propriety of the Government's action in filing the motion to disqualify cannot be questioned. *In Re Gopman* (5th Cir. 1976) 531 F.2d 262, 265. In fact, it has been held that any member of the bar aware of the facts justifying a disqualification of counsel is obligated to call

May 20, 1977, and resulted in an order, entered without objection, on the same day which, in pertinent part, stated:

"The motion is granted to the extent that this defendant is disqualified from representing any of the taxpayers on the list attached to the Government's motion as Exhibit # 2 insofar as they are to be interviewed as potential witnesses regarding their tax returns prepared or caused to be prepared by the defendant, as such representation constitutes a conflict of interest. In addition, it was agreed that a special condition of defendant's bond would be that he not contact any of the above-referenced taxpayers for the purpose of rendering advice to them in connection with the above-referenced interviews. This order does not prohibit the defendant from representing any of these taxpayers with whom he had already established a lawyer-client relationship so far as non-tax matters outside the scope of the pending investigation. Nor does this order prohibit the defendant's attorney from contacting these taxpayers in connection with the preparation of any defense, so long as such contact does not impede the Government's investigation in this matter." [2]

Beginning in early July, 1977, the petitioner began writing letters to the agents of the Internal Revenue Service, who were interviewing the involved taxpayers under the order of May 20, to the effect that he (the petitioner) represented under a power of attorney named taxpayers who were "potential witnesses" in the Government's criminal case against the petitioner, that the agents of the Service were to communicate with such taxpayers only through him, and that the taxpayers repudiated the statements previously given by them to the agents of the Service. Considering this action by the petitioner to be violative of the order of May 20, an agent of the Service communicated with the petitioner about the propriety of his letters but was advised by the latter that he had discussed what he was doing with the district judge who had told him that "it was all right." In the middle of August, the Government proceeded to file its sworn petition for a rule to require the petitioner to show cause why he should not be held in contempt for failure to obey the order of May 20. The rule issued and came on for hearing on October 19, 1977.

At the hearing, the Government offered the testimony of the Internal Revenue Agent who had talked to the petitioner about his letters to the Service. The petitioner did not contradict the agent's testimony and, by his counsel, conceded that he had had no conversations with the District Judge. Several of the taxpayers on whose behalf the petitioner had written to the Service, testified that they had not retracted the statements given by them to the Government. At the conclusion of the hearing, the District Judge adjudged the petitioner in contempt.

We are of opinion that petitioner's violation of the order of May 20 is abundantly clear. Despite the plain language of the order disqualifying him from so appearing, he continued to represent—or at least he claimed to represent—the "potential witnesses" against him. There was a manifest conflict in interest between these taxpayers-witnesses and the petitioner. If there was fraud in the preparation of the refund claims, a question would necessarily arise whether the taxpayer-witness or the petitioner was responsible. With such an obvi-

---

it to the attention of the court. *Estates Theatres, Inc. v. Columbia Pictures Industries, Inc.* (S.D.N.Y.1972) 345 F.Supp. 93, 98.

**2.** Had the petitioner been dissatisfied with the order of disqualification, he could, rather than acquiescing, have appealed the order. *See, In Re Investigation Before April 25 Grand Jury* (1976) 174 U.S.App.D.C. 268, 273, 531 F.2d 600, 605, n. 8; *International Electronics Corp. v.*

*Flanzer* (2d Cir. 1975) 527 F.2d 1288, 1289, n. 1. However, an order of disqualification by the district court will only be reversed for clear abuse of discretion. *Cinema 5, Ltd. v. Cinerama, Inc.* (2d Cir. 1976) 528 F.2d 1384, 1387; *Richardson v. Hamilton International Corporation* (3d Cir. 1972) 469 F.2d 1382, 1386, *cert. den.* 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964; *In Re Gopman, supra,* at 266.

ous conflict in interest, there was unquestioned authority to disqualify the petitioner from representing or advising the taxpayers-witnesses.[3] And this is particularly so, since the petitioner is a lawyer and most of the taxpayers-witnesses are lay persons of limited education and little or no knowledge of either tax or criminal law.

 That the petitioner was continuing to assert the right to represent the "potential witnesses" and to advise them "in connection with [their] * * * interviews" by the Service in disregard of the court's order of May 20 and despite his obvious disqualification necessarily follows from petitioner's statement in his letters to the Service that the witnesses were repudiating the statements they had previously given the Service's agents. If it be assumed, however, that he falsely represented what the taxpayers had authorized him to state to the Internal Revenue Service about their previous statements and about his continued representation of them, the petitioner would clearly have been seeking by his action to interfere with the Service in its dealings with the taxpayers concerned. In either event, the petitioner was in flagrant violation of the court's order to which the petitioner had agreed.

The petitioner's excuse for his conduct is that, in writing the letters, he was asserting merely the right to represent the taxpayers-witnesses with reference to their claims for tax refunds but not to represent them as "potential witnesses" in the criminal investigation. Such an excuse is disingenuous. The claims for tax refunds—whether justified or fraudulent—were the gist of the Government's charges against the petitioner. If the Government could only communicate with these "potential witnesses" about the circumstances of the tax refunds

through the petitioner as counsel, it was absurd to argue that the petitioner was not purporting to act as counsel in the face of his disqualification in connection with the petitioner's prosecution. And the record supports the conclusion that the petitioner knew that he was violating the order of May 20. Otherwise, he would not have made the false representation that he did to the agent for the Internal Revenue about having obtained the approval of the district judge for his action.

Judgment of the district court is accordingly affirmed.

---

**3.** In determining whether to disqualify counsel for conflict of interest, the trial court is not to weigh the circumstances "with hair-splitting nicety" but, in the proper exercise of its supervisory power over the members of the bar and with a view of preventing "the appearance of impropriety," it is to resolve all doubts in favor of disqualification. *Gas–A–Tron of Arizona v. Union Oil Co. of California* (9th Cir. 1976) 534

F.2d 1322, 1324–25; *United States v. Trafficante* (5th Cir. 1964) 328 F.2d 117, 120. Neither is the court to consider whether the motives of counsel in seeking to appear despite his conflict are pure or corrupt; in either case the disqualification is plain. *Scheffki v. Chicago, Milwaukee, St. Paul & Pac. R. Co.* (1971) 1 Ill.App.3d 557, 274 N.E.2d 631, 634.