Fon ROGERS, II, Trustee, Lon
B. Rogers Bradshaw Trust
No. 2, Plaintiff,

v.

The PITTSTON COMPANY, Jewell Ridge
Coal Corporation, Jewell Smokeless
Coal Corporation, and Vansant Coal
Corporation, Defendants.

JEWELL RIDGE COAL CORPORA-
TION, the Pittston Company, and
Thames Development, Ltd., Plaintiffs,

v.

Fon ROGERS, II, Trustee, Lon B. Rogers
Bradshaw Trust No. 2, Marylon R.
Glass, Martha R. Plaster, Vansant Coal
Corporation, Jewell Resources Corpo-
ration, and Jewell Smokeless Coal Cor-
poration, Defendants.

Civ A. Nos. 92–0019–A, 92–0027–A.

United States District Court,
W.D. Virginia,
Abingdon Division.

Sept. 18, 1992.

---

Stephen M. Hodges, Abingdon, Va., for Jewell Ridge Coal Corp., Pittston Co., Thames Development Ltd.

Robert B. Altizer, Tazewell, Va., Larry B. Kirksey, Donald R. Johnson, Bristol, Va., for Fon Rogers, II, Marylon R. Glass, Martha R. Plaster.

Thomas L. Pruitt, Grundy, Va., for Jewell Resources, Vansant Coal Corp., Jewell Smokeless Coal Corp., Thomas L. Pruitt, Grundy, Va.

1. In addition to naming Pittston and Jewell Ridge in their suit, the plaintiffs to the second case named Jewell Smokeless Coal Corporation and Vansant Coal Corporation as additional defendants.

2. Judge Kinser heard the original Motion to Disqualify Counsel upon referral from the District Court, pursuant to 28 U.S.C. § 636(b)(1)(A).

3. According to Jewell Ridge, they brought suit for declaratory judgment after Rogers' representatives alleged during meetings between the parties that Jewell Ridge had violated various lease

## MEMORANDUM OPINION AND ORDER

GLEN M. WILLIAMS, Senior District Judge.

The Pittston Company ("Pittston"), Jewell Ridge Coal Corporation ("Jewell Ridge"), and Thames Development, Ltd., initially brought suit for declaratory judgment against Fon Rogers, II, trustee of Lon B. Rogers Bradshaw Trust No. 2 ("the Trust"), and against Fon Rogers II, Marylon R. Glass, and Martha R. Plaster ("Rogers"), as beneficiaries of the Trust, Vansant Coal Corporation, Jewell Resources Corporation, and Jewell Smokeless Coal Corporation. The suit was first brought in the Circuit Court of Buchanan County, Virginia.

Subsequently, Pittston and Jewell Ridge removed its suit to this Court pursuant to 28 U.S.C. § 1441(a), with original jurisdiction for declaratory judgment based on 28 U.S.C. § 2201. Rogers then brought a separate suit, not joined to the first, against Pittston and Jewell Ridge, under diversity jurisdiction, 28 U.S.C. § 1332.[1]

These two cases are presently before the Court under Rogers' Motion for Reconsideration of the Order of United States Magistrate Judge Cynthia D. Kinser, pursuant to 28 U.S.C. § 636(b)(1)(A). Judge Kinser's opinion disqualified Rogers' attorney, Donald R. Johnson.[2] This Court heard argument as to whether or not the Magistrate's Order was clearly erroneous on September 8, 1992.

## FACTS

The two cases involve overlapping issues[3] pertaining to two leases[4] of approxi-

provisions. In its suit for declaratory judgment, Jewell Ridge seeks resolution of whether or not it breached covenants

 1) to mine diligently;

 2) to mine a fair proportion of coal from Rogers' property that may be jointly mined with third party land;

 3) to mine in a nonnegligent manner, avoiding "lost coal"; and

 4) whether or not Jewell Ridge wrongfully deposited coal mining refuse on the leased property.

4. See note 4 on page 352.

mately 9,000 acres of land in Buchanan County, Virginia, and McDowell County, West Virginia. Pittston and Jewell Ridge seek to disqualify Rogers' attorney Donald R. Johnson, arguing that from February 1, 1978, until May, 1985, Johnson served as in-house counsel for Pittston at its law department in Lebanon, Virginia. Jewell Ridge, as a subsidiary of Pittston, relied on Pittston's law department for legal advice.

In April, 1984, while he worked as counsel for Pittston, Johnson reviewed the leases in question in order to interpret their minimum royalty provisions. Lon B. Rogers initially wrote a letter requesting minimum royalties, and Johnson, finding nothing in the leases conflicting with Lon B. Rogers' request, directed the Pittston accounting department to begin paying the royalties.

According to Johnson's recollection, this was the only dealing he had with the Rogers leases. While employed at Pittston, Johnson never met nor spoke with Lon B. Rogers or Fon Rogers, II, and during Johnson's tenure, no disputes arose between Pittston and either of the Rogers.

In October, 1990, Lon B. Rogers, upon the recommendation of an attorney from Grundy, Virginia, sought the advice of Attorney Johnson on the Fourth Supplement to the 1955 lease. The parties negotiated for several months over their differences, and in April, 1991, Jewell Ridge sent a letter to Rogers disclaiming any liability. In December, 1991, Lon B. Rogers transferred the property to a trust, with Fon Rogers, II, as trustee. Soon afterwards, Jewell Ridge filed a suit for declaratory judgment.

Pittston has submitted several documents concerning the Rogers leases to the Court for *in camera* inspection. One document, written by a colleague of Johnson's while he was at Pittston, concerns an issue in the case. Johnson is copied to the document. Neither having seen the document since Pittston brought the motion to disqualify, nor having any recall of the document, Johnson cannot comment further.

Another document under seal, created by yet another Pittston attorney while Johnson was at Pittston, deals with a different issue in the cases at hand. Johnson is not copied to this document, does not remember the document, and cannot comment on the document because it is under seal. The document in question is dated June, 1984, after Johnson had reviewed the Rogers leases, so it is unlikely that Johnson ever actually saw this document.

At the hearing before the Magistrate Judge, the former president of Jewell Ridge, Noel Stallard (who now works for a different Pittston subsidiary), testified that he would be "uncomfortable" having Johnson oppose Pittston and Jewell Ridge after many years of Johnson's general confidential dealings with the companies.

Johnson testified at the same hearing that he knew of no Pittston or Jewell Ridge confidences that he could possibly share with his current client, and that even if he did, he would not betray his former clients.

## ANALYSIS

In reviewing the order of a United States magistrate judge after designating the magistrate to hear the matter, a district court may reconsider the order under a "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A) (1991). Upon careful review of this matter, this Court finds that the order below was not

---

Rogers' suit against Jewell Ridge is for damages. Rogers alleges that Jewell Ridge 1) failed to mine a fair proportion of coal from Rogers' property that may be jointly mined with third party land; 2) committed trespass by cleaning, processing, and shipping coal, and depositing coal refuse, without authorization from the lessor; and 3) committed trespass by mining and transporting third party coal under or on Rogers' property without authorization in the leases.

4. The parties signed the first lease in 1955 and the second 1970. There are also various supplemental agreements and extensions.

In each lease and lease supplement, the lessor is Lon B. Rogers, whose son, Fon Rogers II, is now trustee of his father's estate and a party to this suit. The lessee is Jewell Ridge Coal Corporation. Sublessors include Jewell Smokeless Coal Corporation and Vansant Coal Corporation, both defendants in the Rogers suit.

clearly erroneous, and the disqualification of Rogers' counsel should stand.

Pittston and Jewell Ridge seek to disqualify Johnson on the basis of Virginia Code of Professional Responsibility Disciplinary Rule 5–105(D) (1991):

> A lawyer who has represented a client in a matter shall not thereafter represent another person in the same or substantially related matter if the interest of that person is adverse in any material respect to the interest of the former client unless the former client consents after disclosure.

*Id.* Pittston and Jewell Ridge obviously do not consent to Johnson's representation of Rogers. Because neither party denies that Johnson, as in-house counsel to Pittston, shared an attorney-client relationship with Pittston and Jewell Ridge, the parties' controversy in this case involves the determination of whether there is "substantially related matter." *See Tessier v. Plastic Surgery Specialist, Inc.,* 731 F.Supp. 724, 730 (E.D.Va.1990) (setting forth the two-part test).

There is considerable tension between Disciplinary Rule 5–105(D) and another long-held legal tenet, the right to counsel of one's own choosing. *Tessier,* 731 F.Supp. at 729. While this right is less compelling in a civil case as opposed to a criminal one, nevertheless opposing parties can work great hardship by frivolously seeking to disqualify one another's counsel under the guise of ethics. *Id.,* 731 F.Supp. at 728.

Disqualification is a "serious matter which cannot be based on imagined scenarios of conflict." *Tessier,* 731 F.Supp. at 729. The moving party has a "high standard of proof" to meet in order to prove that counsel should be disqualified. *Id.* at 729 (quoting *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 518 F.2d 751, 753 (2d Cir.1975). In addition, a "familiarity with the workings of a corporation or the personalities of its representatives ... is totally insufficient as a basis for disqualification." *In re Chantilly Constr. Corp.,* 39 B.R. 466, 470–71 (E.D.Va.1984) (citing *International Paper Co. v. Lloyd Mfg. Co.,* 555 F.Supp. 125, 132 (N.D.Ill., E.D.1982)).

■ Disqualification issues must be decided on a case-by-case basis. *See In re Asbestos Cases,* 514 F.Supp. 914, 924 (E.D.Va.1981). The Fourth Circuit disapproves of "mechanical" application of disciplinary rules, and instead seeks analysis of the harm to the actual parties before the court. *Aetna Casualty & Sur. Co. v. United States,* 570 F.2d 1197, 1202 (4th Cir.), *cert. denied,* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978).

However, when a difficult choice must be made for or against disqualification, the Fourth Circuit has set forth the following guideline:

> the trial court is not to weigh the circumstances "with hair-splitting nicety" but, in the proper exercise of supervisory power over the members of the bar and with a view of preventing "the appearance of impropriety," it is to resolve all doubts in favor of disqualification.

*United States v. Clarkson,* 567 F.2d 270, 273, n. 3 (4th Cir.1977) (interpreting *Gas–A–Tron v. Union Oil Co.,* 534 F.2d 1322, 1324–25 (9th Cir.1976)). In essence, "the right of one to retain counsel of his choosing is 'secondary in importance to the Court's duty to maintain the highest standards of professional conduct to insure and preserve trust in the integrity of the bar.'" *Tessier,* 731 F.Supp. at 729 (quoting *In re Asbestos Cases,* 514 F.Supp. at 925).

Working with the rule that close cases will fall on the side of disqualification, the Court turns to an examination of whether or not Disciplinary Rule 5–105(D) applies to this case.

■ As stated, this case turns on whether or not Johnson's work for Pittston was substantially related to the dispute over the Rogers leases. "Substantially related" has been interpreted to mean "identical" or "essentially the same." *Tessier,* 731 F.Supp. at 730 (quoting *Gov't of India v. Cook Indus.,* 569 F.2d 737, 739–40 (2d Cir.1978)). In determining whether the two cases are "substantially related," the court must decide whether the attorney could reasonably

have been exposed to client confidences in the former case. *Chantilly,* 39 B.R. at 471 (quoting *T.C. Theatre Corp. v. Warner Bros. Pictures,* 113 F.Supp. 265, 269 (S.D.N.Y.1953).

■ "The substantial relationship test is not a rule of substantive law but a measure of the quantum of evidence required for proof of the existence of the professional obligation." *Westinghouse Elec. Corp. v. Gulf Oil Corp.,* 588 F.2d 221, 224 (7th Cir.1978). No actual receipt of confidences must be shown; such a standard would place an unreasonable burden on the moving party. *Id.; Gov't of India,* 569 F.2d at 740. Where the matters are determined to be substantially related, and there was a reasonable chance that the attorney received confidences in the first matter, an irrebuttable presumption arises that confidences were exchanged. *Duncan v. Merrill Lynch, Pierce, Fenner & Smith,* 646 F.2d 1020, 1028 (5th Cir.1981), *cert. denied,* 454 U.S. 895, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981); *Westinghouse Elec. Corp. v. Gulf Oil Corp.,* 588 F.2d 221, 224, n. 3 (7th Cir.1978); *Oyster v. Bell Asbestos Mines,* 568 F.Supp. 80, 81 (E.D.Pa.1983).[5]

■ In this case, the Court has reached the difficult decision that the matters were substantially related, using the *Tessier* interpretation of that language to mean "identical" or "essentially the same." *Tessier,* 731 F.Supp. at 730 (quoting *Gov't of India,* 569 F.2d 737, 739–40). Johnson reviewed the exact leases in question in the later litigation. Although Johnson only examined the minimum royalties issue, and no such issue is involved in the later cases, he could reasonably have had access to confidential information while reviewing the Rogers leases. Rogers' argument that the leases were public misses the point. Johnson did not merely "read" the leases, as a lay person might; he actually interpreted the minimum royalties provision for conflict with Jewell Ridge's interest.

The Court does not rely on this incident. alone, however, in disqualifying Johnson. Johnson was copied to a document prepared by a legal colleague at Pittston, dealing with one of the issues now in the case. While Johnson testified that he did not recall this document, Pittston and Jewell Ridge are not required to demonstrate actual confidences. *Duncan,* 646 F.2d at 1028; *Westinghouse,* 588 F.2d at 224; *Gov't of India,* 569 F.2d at 740.

This Court has no doubt that Johnson testified truthfully to his lack of knowledge of any confidences. Furthermore, this Court is convinced that Johnson has made every effort to ensure that he was acting in an ethical manner.[6] However, it is not for

---

**5.** This Court believes that *Chantilly,* 39 B.R. 466, incorrectly states the law when it describes an "irrebuttable presumption" that confidential information was exchanged in the prior matter based on the attorney-client relationship alone. *Id.* at 469, 473; *Tessier,* 731 F.Supp. at 731, and the Magistrate Judge's memorandum opinion in this case, relying on *Chantilly.*

These cases cloud the issue of when the irrebuttable presumption is created. It is not created simply by the fact of a previous attorney-client relationship, because that would terminate the inquiry and render DR 5–105(D) and similar provisions useless. The party moving for disqualification must prove that the two matters were substantially related, which then creates an irrebuttable presumption that confidences were exchanged. *Duncan,* 646 F.2d at 1028; *Westinghouse,* 588 F.2d at 224, n. 3; *Oyster,* 568 F.Supp. at 81.

Some courts even extend the rebuttable presumption beyond the establishment of substantial relatedness. For discussions of the merits of both views at this later juncture, *see Gov't. of India,* 569 F.2d 737, 740–41 (Mansfield, J., con-

curring); *United States Football League v. National Football League,* 605 F.Supp. 1448, 1461, n. 28 (S.D.N.Y.1985); *In re Dayco Corp. Derivative Sec. Litig.,* 102 F.R.D. 624, 629 (S.D.Ohio, W.D., 1984).

It is important not to confuse the irrebuttable presumption that confidences were exchanged because two matters are substantially related, and "the different presumption that each individual attorney in a firm was privy to those confidences." *United States Football League* 605 F.Supp. 1448, 1461–62.

**6.** For example, Johnson submitted a hypothetical scenario to the Ethics Committee of the Virginia State Bar for an informal ethics opinion in this matter. The Committee decided that on the basis of Johnson's information an attorney would have no conflict of interest. Pittston also submitted its own set of facts to the Committee and received a reply favorable to its view.

Johnson clearly understands the ethical boundaries of representation, as illustrated by

the court to consider "whether the motives of counsel in seeking to appear despite his conflict are pure or corrupt; in either case the disqualification is plain." *Clarkson,* 567 F.2d at 273, n. 3 (citing *Scheffki v. Chicago, Milwaukee, St. Paul & Pac. R. Co.,* 1 Ill.App.3d 557, 274 N.E.2d 631, 634 (1971)).

The Court is also mindful of the burden placed on Rogers in seeking new counsel to replace Johnson. However, even taking Johnson's testimony that he recalls no confidences as true, this case still presents the sort of "hair-splitting" that the Fourth Circuit cautions courts to avoid. All doubts are to be resolved in favor of disqualification. *Clarkson,* 567 F.2d at 273, n. 3.

Rogers emphasizes that there was no ongoing dispute between Rogers and Pittston or Jewell Ridge during Johnson's tenure with Pittston. The correct test for disqualification, however, does not require an actual dispute between the parties; instead, the standard is substantial relatedness.

 Rogers also protests the *in camera* submission of the various memoranda to the Court. Because the documents are under seal, Johnson argues that he cannot adequately respond to them. But because the moving party is not required to publicly reveal actual confidences, *in camera* submission of documents is a recognized way of establishing that the two matters are substantially related. *Westinghouse,* 588 F.2d at 224, n. 3; *Gov't of India,* 569 F.2d at 741; *United States Football League,* 605 F.Supp. at 1462.

In the present case, Johnson was actually copied to the sealed document in question; Pittston is not required to reveal the document so that Johnson may dispute it. The document concerns an issue currently in contention between the parties. All the Court must inquire is whether "it could

reasonably be said that during the former representation the attorney might have acquired information related to the subject matter of the subsequent representation." *Chantilly,* 39 B.R. at 471 (quoting *T.C. Theatre,* 113 F.Supp. at 269).

As the Magistrate Judge emphasized, Johnson's disqualification in this matter in no way prevents representation in other matters against Pittston and Jewell Ridge. Johnson testified at the hearing that in the past, he has represented others in such a capacity.

For the foregoing reasons, this Court finds that the Magistrate Judge's order was not clearly erroneous as a matter of law, and the disqualification of Rogers' counsel is affirmed.

It is accordingly ordered that Donald R. Johnson, Esq., is disqualified from representing Fon Rogers II, Trustee, in this litigation.

his testimony at the hearing before the Magistrate Judge:

> If there was a document ... related directly to the issues, then I doubt that the Bar Committee would have rendered the same opinion if they knew of any secrets that I had obtained, but I don't know of any secrets that I obtained.

Transcript at 39 (April 28, 1992). As previously discussed, there is such a document, but because it is under seal, and contains confidences, Johnson has not seen it since Pittston brought the motion to disqualify him.