**In re Richard G. STOKES, Debtor.**

**Richard G. STOKES, Plaintiff,**

**v.**

**Diana J. M. FIRESTONE, (f/k/a Diana J.M. Stokes), et. al. Defendants.**

**Bankruptcy No. 92–14644.
Adv. No. 92–1481.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

June 29, 1993.

Ann E. Schmitt, Hazel & Thomas, P.C., Washington, DC, for plaintiff.

Michael McGettigan, Murphy, McGettigan, Richards & West, P.C., Alexandria, VA, for defendant Diana J. Firestone.

Thomas J. Catliota, Shaw, Pittman, Potts & Trowbridge, Washington, DC, for defendant Lone Stone, L.C.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

This adversary proceeding comes before the court on defendant's motion to disqualify counsel for plaintiff, Hazel & Thomas ("H & T"). Defendant alleges she is a former client of H & T and that Disciplinary Rule 5–105(D) of the Virginia Code of Professional Responsibility requires H & T to withdraw as counsel for plaintiff.

Hearing was held on defendant's motion on June 3, and 4, 1993, and the court took the matter under advisement. For the reasons stated in this memorandum opinion defendant's motion is denied.

### Findings of Fact

Richard G. Stokes ("Stokes") filed his chapter 11 bankruptcy petition on September 29, 1992. This adversary proceeding was filed on December 23, 1992. Trial on the merits of the adversary proceeding was originally scheduled for June 2, 1993, but has been postponed pending this court ruling on defendant's motion to disqualify.

Stokes and Diana J.M. Firestone (f/k/a Diana J.M. Stokes) ("Firestone") were divorced in 1974. The parties entered into a property settlement agreement ("agreement") pursuant to their divorce. Firestone was represented in the divorce proceedings by Phillip Broughton, a New York attorney who has been Firestone's personal attorney for some 25 years. The agreement imposed various obligations on the parties with regards to the disposition of marital property. In particular, the agreement imposed specific obligations on Stokes and Firestone with regards to a parcel of real property known as Shenstone Farm ("Shenstone").[1]

The substance of the underlying adversary proceeding is essentially a domestic relations dispute. Stokes' amended complaint contains the following 7 counts relating to Shenstone, some of which appear to be alternative requests for relief:

(1) Request for Determination and Declaration of Extent of Debtor's Rights, Title, and Interest in Shenstone Farm.

(2) Specific Performance of Divorce Agreement.

(3) Action to Quiet Title to Shenstone Farm.

(4) Request for Authority to Sell Property Pursuant to 11 U.S.C. § 363(h).

(5) Request for Partition of Property Pursuant to Virginia Code § 8.01–81.

(6) Breach of Contract Against Firestone.

(7) Claim for Indemnification Against Firestone.

The essential allegations are that Firestone breached her obligations under the agreement with regards to Shenstone. Apparently, Firestone was supposed to transfer her interest in Shenstone to Stokes, and Stokes was supposed to sell the property within a fixed period of time and divide the proceeds with Firestone. This has not occurred. The agreement also contains indemnity provisions which Stokes seeks to invoke because Firestone's creditors have allegedly docketed substantial judgment liens against Shenstone that affect its marketability.

Firestone's motion to disqualify is based on allegations that H & T represented her in matters involving Shenstone in the late 1980s, 1990, and 1991. Therefore, Firestone believes H & T should be disqualified as Stokes' counsel in this adversary proceeding.

Firestone is currently married to Bertram Firestone. Diana and Bertram Firestone are controlling shareholders in several corporations involved in land investment and development activity on their behalf. Catoctin Stud, Inc., and Firestone Corporation are two of their corporations.

In early 1990 a representative of Catoctin Stud, Inc., Stephan R. Schlesinger, engaged a land use lawyer from H & T in Leesburg, Virginia, to look into potential land development prospects of a property known as Catoctin Stud Farm which the Firestones were apparently considering

---

1. Stokes currently resides at Shenstone.

purchasing. *See* Defendant's Exhibit J. At the time a group of Japanese investors owned Catoctin Stud Farm but were leasing the property to the Firestones who used the property as their personal residence. The land use lawyer from H & T never personally corresponded or communicated with Diana Firestone. He dealt directly with Stephan R. Schlesinger, the designated representative of Catoctin Stud, Inc. The lawyer from H & T testified that he believed his client was a corporate entity and that he never believed he represented Diana Firestone in her individual capacity. All billing statements from H & T were addressed to "Catoctin Stud" or other corporate entities owned by the Firestones. *See* Defendant's Exhibit W1–W16, X1–X7. However, the bills were usually paid by personal check of Bertram and Diana Firestone. The checks were signed by Richard Pappalardo who is the Firestones' personal accountant and the financial representative of their several corporations. *See* Defendant's Exhibit DD.

By October 1990, H & T's representation of the Firestone entities expanded. Stephan R. Schlesinger from Catoctin Stud, Inc., and Steven A. Gogola from Firestone Corporation engaged H & T to explore the land development potential of three additional properties: (1) Beacon Hill Farm; (2) Hutchinson Farm; and (3) *Shenstone Farm*. *See* Defendant's Exhibit L; Plaintiff's Exhibit 5. The Firestones through their corporations were apparently exploring investment opportunities with regards to these properties. Aside from Diana Firestone's one-half ownership interest in Shenstone, neither the Firestones nor their corporations had any ownership interest in any of the subject properties. In 1990 land use concepts in Leesburg were just beginning to evolve and H & T was hired to lobby political officials in Leesburg to adopt a Rural Village Ordinance favorable to the development of the properties in which the Firestone entities were considering investments. *See* Defendant's Exhibit O. Although the land use lawyer from H & T testified that he believed his clients were the Firestone corporate entities he did use the Firestone name in his efforts be-

cause it carried political clout. However, Diana Firestone has never had any correspondence or discussions with any H & T lawyer.

In approximately May 1991 H & T terminated its representation of the Firestone entities because its legal fees were not being paid. *See* Defendant's Exhibit P. The problem was that one of the Firestone entities was in bankruptcy. H & T was advised by Firestone bankruptcy counsel that unless the services were rendered on behalf of the Firestones personally its fees could not be paid outside the bankruptcy. *See* Defendant's Exhibit EE. Accordingly, H & T stated it believed its services benefitted the Firestones personally and that it was entitled to payment from them directly. *See* Defendant's Exhibit FF. Eventually, all the legal fees of H & T were paid in full by the Firestones. *See* Defendant's Exhibit U.

H & T has also represented Stokes in various matters for some 20 years. Particularly in the late 1980s, Stokes engaged H & T to advise him regarding his obligations under the divorce agreement, and to assist him with his obligation to sell Shenstone. Throughout these matters Firestone was represented by Phillip Broughton. At one point the Firestone Corporation placed a contract on Shenstone, but the contract fell through. *See* Plaintiff's Exhibit 3.

In late 1991 the same attorney from H & T that had previously represented the Firestone entities represented Stokes with regards to the potential development of Shenstone. A land development application was eventually submitted to the Loudoun County Department of Planning proposing a mixed use village concept at Shenstone. *See* Defendant's Exhibit V. Stokes and Firestone are listed on the application as co-owners, but only Stokes signed the application. The attorney who submitted the application testified that he believed he was representing only Stokes.

*Discussion and Conclusions of Law*

Disciplinary Rule 5–105 of the Virginia Code of Professional Responsibility states in pertinent part:

(D) A lawyer *who has represented a client* in a matter shall not thereafter represent another person in *the same or substantially related matter* if the interest of that person is adverse in any material respect to the interest of the former client unless the former client consents after disclosure.

(E) If a lawyer is required to decline employment or to withdraw from employment under DR 5–105, no partner or associate of his or his firm may accept or continue such employment.

Virginia Code of Professional Responsibility DR 5–105(D) & (E) (1992) (emphasis added).

■■■■ The Virginia Code of Professional Responsibility also proscribes knowing use of client confidences and secrets.[2] The disqualification remedy is supposed to guard against even inadvertent revelation or use of client information. However, while the Code of Professional Responsibility is a source by which courts may be guided, it is not dispositive in a motion to disqualify. *See United States Football League v. National Football League,* 605 F.Supp. 1448, 1463 n. 31 (S.D.N.Y.1985). Disqualification issues must be decided on a case-by-case basis. *Rogers v. Pittston Co.,* 800 F.Supp. 350, 353 (W.D.Va.1992) (citing *In re Asbestos Cases,* 514 F.Supp. 914, 924 (E.D.Va. 1981)). The Fourth Circuit disapproves of a "mechanical and didactic" application of the disciplinary rules, and instead seeks analysis of the harm to the parties before the court. *See Aetna Casualty & Sur. Co. v. United States,* 570 F.2d 1197, 1202 (4th Cir.1978) (citing *International Electronics Corp. v. Flanzer,* 527 F.2d 1288, 1293 (2d Cir.1975)). Disqualification is a serious matter which cannot be based on imagined scenarios of conflict, and the moving party has a high standard of proof to meet in order to prove that counsel should be dis-

qualified. *Tessier v. Plastic Surgery Specialists, Inc.,* 731 F.Supp. 724, 729 (E.D.Va. 1990). However, in a close case the trial court should not engage in "hair-splitting" niceties but instead resolve all doubts in favor of disqualification. *Rogers v. Pittston Co.,* 800 F.Supp. 350, 353 (W.D.Va. 1992) (citing *United States v. Clarkson,* 567 F.2d 270, 273 n. 3 (4th Cir.1977).

■■■■ A motion to disqualify counsel requires the court to balance several important factors: the right of a party to retain counsel of his choice and the substantial hardship which might result from disqualification as against the public perception of and the public trust in the judicial system. *See Chantilly Construction Corporation v. John Driggs Company, Inc. (In re Chantilly Const. Corp.),* 39 B.R. 466, 468 (Bankr.E.D.Va.1984) (citing *Powell v. Alabama,* 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932)). The guiding principle in considering motions to disqualify counsel is safeguarding the integrity of the court proceedings; the purpose of granting such motions is to eliminate the threat that the litigation will be tainted. *United States Football League v. National Football League,* 605 F.Supp. at 1464.

■■■ A motion to disqualify essentially involves a two-part test. The movant must establish the following:

(1) An attorney-client relationship existed with the alleged former client, and

(2) the former representation and the current controversy must be substantially related.

*See Rogers v. Pittston Co.,* 800 F.Supp. 350, 353–54 (W.D.Va.1992); *Gaumer v. McDaniel,* 811 F.Supp. 1113, 1117–18 (D.Md.1991); *Tessier v. Plastic Surgery Specialists, Inc.,* 731 F.Supp. 724, 730 (E.D.Va.1990); *Chantilly Construction Corporation v. John Driggs Company,*

---

**2.** DR 4–101(B) provides:

Except as provided by DR 4–101(C) and (D), a lawyer shall not knowingly:
 (1) Reveal a confidence or secret of his client.
 (2) Use a confidence or secret of his client to the disadvantage of the client.

 (3) Use a confidence or secret of his client for the advantage of himself or third person, unless the client consents after full disclosure.

Virginia Code of Professional Responsibility DR 4–101(B) (1992).

*Inc. (In re Chantilly Const. Corp.)*, 39 B.R. 466, 469 (Bankr.E.D.Va.1984).

 Once it is determined that an attorney-client relationship existed and that the matters are determined to be substantially related, then an irrebuttable presumption arises that relevant confidences were exchanged so that the attorney and the attorney's law firm must be disqualified.[3] *Rogers v. Pittston Co.*, 800 F.Supp. at 354 n. 5; *see also* Virginia Code of Responsibility DR 5–105(E) (1992); Virginia Legal Ethic Opinion No. 758 (January 13, 1986).

The court will address each part of the disqualification test separately.

*Attorney-client relationship.*

 An attorney-client relationship must exist and must be proven by the party supporting a motion to disqualify. *Chantilly Construction Corporation v. John Driggs Company, Inc. (In re Chantilly Const. Corp.)*, 39 B.R. 466, 469 (Bankr.E.D.Va.1984) (citations omitted). Both parties must consent to the creation of the relationship, and this consent may be either expressed or implied by the conduct of the parties. *In re Chantilly Const. Corp.*, 39 B.R. at 469 (citations omitted).

 In this case Firestone attempts to establish an attorney-client relationship between her and H & T based upon the fact that she and her husband, Bertram Firestone, personally paid the legal bills of H & T. It is well established, however, that the payment or nonpayment of fees does not establish the existence of an attorney-client relationship. *In re Chantilly Const. Corp.*, 39 B.R. at 469 (citing *Westinghouse Electric Corp. v. Kerr–McGee Corp.*, 580 F.2d 1311, 1317 (7th Cir.1978)).

Firestone also attempts to establish an attorney-client relationship based upon the fact that H & T represented closely held corporations wholly owned by the Firestones. However, the Virginia Code of Professional Responsibility is clear that "a lawyer employed or retained by a corporation or similar entity owes his allegiance to the entity and *not to a stockholder, director, officer, employee, representative, or other person connected with the entity.*" *See* Virginia Code of Professional Responsibility EC 5–18 (1992) (emphasis added); *see also Bobbitt v. Victorian House, Inc.*, 545 F.Supp. 1124, 1126 (N.D.Ill.1982); *Wayland v. Shore Lobster & Shrimp Corp.*, 537 F.Supp. 1220, 1223 (S.D.N.Y. 1982).

Lastly, Firestone attempts to establish an attorney-client relationship with H & T based upon its assistance in efforts to sell Shenstone in the late 1980s. However, the evidence shows that H & T represented Stokes in the joint efforts to sell Shenstone and that Firestone at all times was represented by her divorce lawyer and personal attorney of 25 years, Phillip Broughton. There is simply no basis in fact for Firestone claim that she had an attorney client relationship with H & T based upon her and her ex-husband's joint efforts to sell Shenstone in the late 1980s. The evidence is unrefuted that no attorney from H & T

---

**3.** The irrebuttable presumption prevents the former client-present adversary from being put into the dilemma of having to reveal confidences in order to obtain a disqualification. *See Government of India v. Cook Industries, Inc.*, 569 F.2d 737, 741 (2d Cir.1978) (Mansfield, J., concurring). However, in some cases where an attorney can show that no confidential information was gained, the former client's interest may be outweighed by the attorney's interest in maintaining the attorney's reputation, which may needlessly suffer unless counsel is given an opportunity to clear counsel's name. *Id.* Therefore, it has been argued that trial courts should have the discretion in an appropriate case to permit the door to be opened for rebuttal of the presumption through the use of *in camera* or other protective devices to safeguard the interest of the former client. *Id.* In fact, this *in camera* approach was used, albeit with the consent of the parties, by Judge Leisure in *United States Football League v. National Football League* where he found the purpose for the irrebuttable presumption rule had been removed and thus found it inapplicable. *United States Football League v. National Football League*, 605 F.Supp. at 1462. Despite the flexibility and appeal of this approach, the prevailing rule is that the presumption is irrebuttable. *See e.g., In re American Airlines, Inc., AMR Corp.*, 972 F.2d 605, 614 (5th Cir.1992); *Duncan v. Merrill Lynch, Pierce, Fenner & Smith*, 646 F.2d 1020, 1028 (5th Cir.1981); *Westinghouse Electric Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 224 (7th Cir.1978); *Government of India v. Cook Industries, Inc.*, 569 F.2d 737, 740 (2d Cir.1978); *Rogers v. Pittston Co.*, 800 F.Supp. 350, 354 (W.D.Va.1992).

has ever spoken to or corresponded with Diana Firestone in any professional context.[4] Accordingly, the court is hard-pressed to find the existence of an attorney-client relationship between H & T and Diana Firestone.

■ Notwithstanding, there is one narrow instance where the court believes the existence of an attorney-client relationship existed. When H & T submitted a land development application for Shenstone to the Loudoun County Department or Planning in late 1991, it did so on behalf of the owners of the property. Despite the fact that only Stokes signed the application and that the lawyer involved testified that he believed he was representing Stokes only, the application clearly listed Diana Firestone as co-owner. *See* Defendant's Exhibit V. As such, the court must conclude that H & T was representing both Stokes and Firestone with regards to the land development application. In this narrow context the court believes the existence of an attorney-client relationship has been established.

*Substantial relatedness.*

■ "Substantially related" has been interpreted to mean "identical" or "essentially the same." *Rogers v. Pittston Co.,* 800 F.Supp. 350, 353 (W.D.Va.1992). The substantial relationship test requires a "virtual congruence of issues", and the relationship between issues in the prior and present case must be "patently clear." *United States Football League v. National Football League,* 605 F.Supp. 1448, 1457 (S.D.N.Y.1985). Again, the concern is whether there is a reasonable probability that confidences were disclosed in the prior

representation which could be used against the former client in the current litigation.[5]

■ The scope of the prior representation here involved the submission of a land development application for the Shenstone property on behalf of Stokes and Firestone. The current litigation involves the parties' rights and obligations as to Shenstone under the terms of their divorce agreement. I find a substantial relationship lacking, even though there is a superficial resemblance in that both involve Shenstone. The land use issues involved in the previous representation and the domestic relations issues involved in the current litigation are simply not related, much less identical. *See e.g., Gaumer v. McDaniel,* 811 F.Supp. 1113, 1118–19 (D.Md.1991); *C.A.M. v. E.B. Marks Music, Inc.,* 558 F.Supp. 57, 59 (S.D.N.Y.1983); *GAF Corp. v. Heyman,* 559 F.Supp. 748, 752 (S.D.N.Y.1983). The general familiarity H & T may have with plans to develop Shenstone is not a basis for disqualification when the development plans of Shenstone are not in issue in the current litigation. *See United States Football League v. National Football League,* 605 F.Supp. at 1459–60 (citing *Finkelstein v. Chock Full O'Nuts Corp.,* 82 Civ. 6725 (S.D.N.Y. Oct. 19, 1982)). Moreover, since no attorney from H & T has ever communicated with Diana Firestone it would be absurd to invoke an irrebuttable presumption that relevant confidences were exchanged that could be used against her in the current litigation. The court concludes that there is virtually no possibility the court proceedings would be tainted or that Firestone's rights would be prejudiced if H & T is allowed to serve as plaintiff's counsel.[6] Accordingly, defendant's motion to

---

4. The court notes that Firestone did not testify or even attend the hearing on her motion to disqualify plaintiff's counsel.

5. A legion of Virginia Legal Ethics Opinions support the proposition that it is not improper for an attorney to represent a plaintiff against a defendant who is a former client if the matters are not the same or substantially related to the earlier representation and no confidences or secrets were earned in the prior representation which could be used to disadvantage the former client. *See e.g.,* Virginia Legal Ethics Opinion No. 1196 (February 22, 1989); No. 1032 (Febru-

ary 2, 1988); No. 933 (June 11, 1987); No. 803 (May 27, 1986); No. 774 (March 11, 1986); No. 672 (February 20, 1985); No. 622 (November 13, 1984); No. 538 (January 18, 1984); No. 295 (February 17, 1978).

6. Firestone's counsel argued at hearing that the land use attorney from H & T may be called as a witness at trial to testify as to Firestone's efforts to preserve or enhance the value of Shenstone, and thus H & T should be disqualified pursuant to Disciplinary Rule 5–101(B). DR 5–101(B) states in part:

disqualify counsel for plaintiff must be denied.

A separate order will be entered.

A lawyer shall not accept employment in ... litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness ...

Virginia Code of Professional Responsibility DR 5-101(B) (1992).

Initially, the court questions the need for Firestone to call any lawyer from H & T to testify. She is competent to testify about what actions she has taken with regards to Shenstone. Moreover, there are three exceptions to the so called "witness rule" found in DR 5-101(B). Notwithstanding DR 5-101(B) a lawyer may undertake the employment and may testify:

(1) if the testimony will relate solely to an uncontested matter or to a matter of formality ...

(2) if the testimony will relate solely to the nature and value of his or his firm's legal services rendered to the client; or

(3) ... if refusal of employment would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.

Virginia Code of Professional Responsibility DR 5-101(B)(1)-(3); Virginia Legal Ethics Opinion No. 1313 (November 16, 1990).

All three exceptions may be applicable to this case. Accordingly, the court is not persuaded that DR 5-101(B) supports the motion to disqualify.