**PLANT GENETIC SYSTEMS, N.V., Plaintiff,**

v.

**CIBA SEEDS and Mycogen Plant Science, Inc., Defendants.**

No. 1:95CV00741.

United States District Court, M.D. North Carolina, Durham Division.

May 24, 1996.

Mark S. Thomas, Maupin Taylor Ellis & Adams, P.A., Raleigh, NC, for plaintiff Plant Genetic Systems, N.V.

W. Andrew Copenhaver, Elizabeth B. McGee, Womble Carlyle Sandridge & Rice, Winston–Salem, NC, for defendant Ciba Seeds.

James D. Myers, Robert William Glatz, Bell, Seltzer, Park & Gibson, P.A., Raleigh, NC, for defendant Mycogen Plant Science, Inc.

### MEMORANDUM OPINION

OSTEEN, District Judge.

This matter comes before the court on Defendant Ciba Seeds' Motion to Disqualify the Law Firm of Burns, Doane, Swecker & Mathis.

For the reasons stated herein, the motion will be denied.

## I.  STATEMENT OF THE CASE

On October 18, 1995, Plaintiff Plant Genetic Systems, N.V. ("PGS") filed an action against Defendant Ciba Seeds and Defendant Mycogen Plant Science, Inc. ("MPSI"), alleging infringement of U.S. Patent No. 5,254,799 (" '799 patent") assigned to Plaintiff. The subject matter of the '799 patent is seed corn with genetically engineered *Bacillus thuringiensis* ("Bt") genes. Seed corn with Bt genes is more resistant to insects than conventional seed corn.

On December 22, 1995, Defendant Ciba Seeds filed a Motion to Disqualify the Law Firm of Burns, Doane, Swecker & Mathis ("Burns Doane") from representing Plaintiff on the grounds that Burns Doane has represented and continues to represent Ciba–Geigy A.G. ("Ciba AG") in patent prosecution matters. In particular, Burns Doane has represented Ciba AG in patent prosecution matters which, according to Defendant Ciba Seeds, encompass technology related to the patent at issue. Plaintiff asserts that the present motion is merely a delaying tactic designed to cause hardship to Plaintiff.

## II.  FACTS

Defendant Ciba Seeds, located in the Research Triangle Park, is an unincorporated division of Ciba–Geigy Corp. ("Ciba NY"), a New York corporation with over four billion dollars in annual revenue. Ciba NY is one of a large number of separately incorporated, international subsidiaries of a giant conglomerate called the Ciba–Geigy Limited Group. Ciba AG is a Swiss-based branch of the Ciba–Geigy Limited Group.[1]

In 1990, Ciba AG retained Burns Doane to file a U.S. patent application ("Sautter application") involving an electromechanical bombardment process and machinery used in carrying out the process. The application was based on a patent application which Ciba AG had previously filed in Switzerland. Since the filing of the U.S. application in 1990, Burns Doane has been providing services to the members of Ciba AG's electromechanical group.

Since 1990, Burns Doane has had several contacts with Ciba NY. Defendant contends that the following contacts justify disqualifying Burns Doane from representing Plaintiff:

(1) Within a few weeks after Burns Doane was retained to represent Ciba AG in

---

1. There is a dispute over the precise corporate structure of Ciba–Geigy. Defendant Ciba Seeds contends that Ciba–Geigy A.G. and Ciba–Geigy Limited are the same entity. According to Defendant Ciba Seeds, "Limited" is simply the English language abbreviation for "A.G."

1990, the Sautter application was assigned, at least in part, to Ciba NY.

(2) In October 1991, Burns Doane was informed that a bill for legal services performed for Ciba AG in connection with the Sautter application was to be sent to Ciba NY. Burns Doane submitted that bill to Ciba NY, and the bill was paid by Ciba NY. Bills for subsequent work were paid by Ciba AG.

(3) In 1992, an attorney from Ciba NY, Edward McC. Roberts, inquired about possible representation by Burns Doane of Defendant Ciba Seeds for patent prosecution in the seed corn area. Burns Doane declined the offer because of a conflict with an existing client.

(4) In 1993, a subsidiary of Ciba NY approached Burns Doane and requested representation in connection with a patent matter. Again, Burns Doane declined the offer due to a potential conflict with an existing client.

(5) In 1993, Shawn Foley of Ciba NY called Patrick Keane, an associate with Burns Doane. Foley identified himself as an attorney who planned to leave Ciba NY shortly. Foley stated that he had glanced at a draft of a document that Keane had prepared for submission to the United States Patent and Trademark Office ("USPTO") on behalf of Ciba AG in connection with the Sautter application. Foley suggested that Keane reverse the order of two paragraphs in the document.

(6) Ciba NY occasionally received correspondence, drafts of documents, and copies of documents Burns Doane submitted to and received from the USPTO in connection with the Sautter application.

Based on these contacts, Defendant Ciba Seeds contends that Burns Doane had an attorney-client relationship with Ciba NY, and, therefore, Burns Doane should be disqualified from serving as Plaintiff's counsel.

Plaintiff argues that these contacts fail to establish the requisite elements of an attorney-client relationship between Burns Doane and Ciba NY. In addition, Plaintiff claims that Defendant Ciba Seeds has failed to make any allegations that there has been any exposure to confidential information or that there would be any prejudice if Burns Doane continued to represent Plaintiff.

According to Plaintiff, Ciba AG alone controlled the prosecution of the Sautter application and provided all of the substantive input. Furthermore, Plaintiff contends that the Sautter application handled by Burns Doane is in no way related to the present litigation. The claims in this case concern a *product* (i.e., seed corn). The subject matter of the Sautter application is a *process* (i.e., electro-mechanical bombardment). Plaintiff asserts that the process employed to obtain the product is not relevant to the question of whether or not the patent-in-suit was infringed. Furthermore, Defendant Ciba Seeds has admitted that the process involved in the Sautter application was not used to produce the allegedly infringing seed corn.[2]

Burns Doane continues to represent Ciba AG and has never requested nor obtained consent to represent Plaintiff from Ciba NY or Ciba AG in the present litigation against Defendant Ciba Seeds. Plaintiff alleges that Burns Doane has expended considerable resources to represent Plaintiff, and disqualification of Burns Doane would cause substantial hardship to Plaintiff.

## III. DISCUSSION

### A. Standard for Motion to Disqualify

■ Disqualification issues must be decided on a case-by-case basis. *Rogers v. Pittston Co.*, 800 F.Supp. 350, 353 (W.D.Va.1992), *aff'd*, 996 F.2d 1212 (4th Cir.1993) (citing *In re Asbestos Cases*, 514 F.Supp. 914, 924 (E.D.Va.1981)). The Fourth Circuit disapproves of a "mechanical and didactic" application of the disciplinary rules and instead seeks analysis of the harm to the parties before the court. *See Aetna Casualty &*

---

**2.** Despite the fact that the process involved in the Sautter application was not used to produce the allegedly infringing seed corn, Defendant Ciba

Seeds asserts that the process encompassed by the Sautter application will be an essential issue at trial.

*Sur. Co. v. United States*, 570 F.2d 1197, 1202 (4th Cir.), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978) (citing *International Elec. Corp. v. Flanzer*, 527 F.2d 1288, 1293 (2d Cir.1975)).

A motion to disqualify an attorney is addressed to the discretion of the district court, and a ruling thereon will not be overturned absent a determination of abuse of discretion. *Cheng v. GAF Corp.*, 631 F.2d 1052, 1055 (2d Cir.1980), *vacated on other grounds*, 450 U.S. 903, 101 S.Ct. 1338, 67 L.Ed.2d 327 (1981); *Clinton Mills, Inc. v. Alexander & Alexander, Inc.*, 687 F.Supp. 226, 228 (D.S.C.1988). Disqualification is a serious matter which cannot be based on imagined scenarios of conflict, and the moving party has a high standard of proof to meet in order to prove that counsel should be disqualified. *Tessier v. Plastic Surgery Specialists, Inc.*, 731 F.Supp. 724, 729 (E.D.Va. 1990). However, in a close case the trial court should not engage in "hair-splitting" niceties but instead resolve all doubts in favor of disqualification. *Rogers*, 800 F.Supp. at 353 (citing *United States v. Clarkson*, 567 F.2d 270, 273 n. 3 (4th Cir.1977)); *cf. Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 836 F.2d 1332, 1336 (Fed.Cir.1988) (noting that the Second Circuit "has adopted a 're-strained approach' to attorney disqualification by focusing 'primarily on preserving the integrity of the trial process' ").

A motion to disqualify counsel requires the court to balance several important factors: (1) the right of a party to retain counsel of his choice; and (2) the substantial hardship which might result from disqualification as against the public perception of and the public trust in the judicial system. *See In re Chantilly Constr. Corp.*, 39 B.R. 466, 468 (Bankr.E.D.Va.1984) (citing *Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932)). The guiding principle in considering a motion to disqualify counsel is safeguarding the integrity of the court proceedings; the purpose of granting such motions is to eliminate the threat that the litigation will be tainted. *United States Football League v. National Football League*, 605 F.Supp. 1448, 1464 (S.D.N.Y.1985).

A motion to disqualify essentially involves a two-part test. The movant must establish the following: (1) an attorney-client relationship existed with the alleged former client; and (2) the former representation and the current controversy must be substantially related. *See Rogers*, 800 F.Supp. at 353–54; *Gaumer v. McDaniel*, 811 F.Supp. 1113, 1117–18 (D.Md.1991), *aff'd*, 23 F.3d 400 (4th Cir.1994); *Tessier*, 731 F.Supp. at 730; *In re Chantilly Constr.*, 39 B.R. at 469. If it is determined that an attorney-client relationship existed and that the matters are determined to be substantially related, then an irrebuttable presumption arises that relevant confidences were exchanged so that the attorney and the attorney's law firm must be disqualified. *Rogers*, 800 F.Supp. at 354 n. 5.

Finally, the court must be "ever mindful of the opposing possibility of misuse of disqualification motions for strategic reasons." *Buckley v. Airshield Corp.*, 908 F.Supp. 299, 307 (D.Md.1995).

## B. Attorney–Client Relationship

An attorney-client relationship must exist and must be proven by the party supporting a motion to disqualify. *In re Chantilly Constr.*, 39 B.R. at 469. Both parties must consent to the creation of the relationship, and this consent may be either expressed or implied by the conduct of the parties. *Id.*

Burns Doane was clearly hired to represent Ciba AG in connection with the Sautter application. At no time, however, did Burns Doane expressly or impliedly agree to represent Ciba NY. Subsequent to the hiring of Burns Doane, the Sautter application was assigned, at least in part, to Ciba NY. Although Ciba NY received an interest in the patent at that time, the mere assignment of a patent is not sufficient to establish an attorney-client relationship between Burns Doane and Ciba NY. *Telectronics*, 836 F.2d at 1336; *Beghin–Say v. Rasmussen*, 212 U.S.P.Q. 614, 616 (Comm.Dec.1980); *see SMI Indus. Canada Ltd. v. Caelter Indus., Inc.*, 586 F.Supp. 808, 815 (N.D.N.Y. 1984).

Burns Doane submitted a bill for legal work done for Ciba AG to Ciba NY and received funds from Ciba NY for the work performed for Ciba AG. Payment of bills, however, is also not sufficient to establish an attorney-client relationship between Burns Doane and Ciba NY. "While relevant, such payment does not, in this particular case, establish an attorney-client relationship...." *Beghin–Say,* 212 U.S.P.Q. at 616. In *Beghin–Say,* Rasmussen's attorney forwarded "debit" notes to the French patent agent on Rasmussen's instructions. The debit notes were paid by the French patent agent presumably on behalf of Beghin–Say. The Commissioner of Patents and Trademarks held that no attorney-client relationship was established between Rasmussen's attorney and Beghin–Say. In forwarding the debit notes to the French patent agent, Rasmussen's attorney "was merely following instructions of the individual whom he regarded to be his client." *Id.* at 617.

Ciba Seeds approached Burns Doane and requested representation in a patent matter. In addition, a subsidiary of Ciba NY inquired about representation by Burns Doane. In both instances, Burns Doane declined the offer based on a potential conflict with an existing client. According to Plaintiff, the fact that the inquiry was made supports the argument that there was no attorney-client relationship between Burns Doane and either Ciba Seeds or the Ciba NY subsidiary. Defendant Ciba Seeds asserts that both parties went to Burns Doane for representation because they thought that the law firm was already representing them. According to Defendant, the fact that Burns Doane declined the requests does not establish that they were not existing clients; it simply indicates that they were too busy to accept new matters. The court finds that these facts are not sufficient to establish that an attorney-client relationship existed between Burns Doane and Ciba NY.

An attorney from Ciba NY did propose a stylistic change in a document submitted by Burns Doane to the USPTO on behalf of Ciba AG in connection with the Sautter application. However, no evidence exists to show that Burns Doane ever received any substantive advice or privileged information from the attorney for Ciba NY.

The court finds that the receipt by Ciba NY of correspondence and copies of documents submitted to the USPTO by Burns Doane on behalf of Ciba AG is not indicative of an attorney-client relationship between Burns Doane and Ciba NY. Even if confidential information were contained in the documents sent *from* Burns Doane *to* Ciba NY, an attorney-client relationship is not established because there is no evidence that confidential information was sent *from* Ciba NY *to* Burns Doane.

After consideration of the arguments of counsel and a close reading of the case law, the court finds that there is no evidence sufficient to establish an attorney-client relationship between Burns Doane and Ciba NY.

## C. "Substantially Related" Test

■ Even if the court determined that an attorney-client relationship existed between Burns Doane and Ciba NY, no evidence exists to establish that the Sautter application is "substantially related" to the subject matter of the instant litigation.

■ "Substantially related" has been interpreted to mean "identical" or "essentially the same." *Rogers,* 800 F.Supp. at 353. The "substantially related" test requires a "virtual congruence of issues," and the relationship between the issues in the prior case must be "patently clear." *United States Football League,* 605 F.Supp. at 1457. Again, the concern is whether there is a reasonable probability that confidences were disclosed in the prior representation which could be used against the former client in the current litigation. *In re Stokes,* 156 B.R. 181, 187 (Bankr.E.D.Va.1993).

In a recent patent case decided in this circuit, a district court held that "[i]n order to show a substantial relationship, 'it is not necessary that two lawsuits involve the same operative facts, so long as there is a sufficient similarity of issue.'" *Buckley,* 908 F.Supp. at 304.

The Sautter application involves a process of electromechanical bombardment. The patent-in-suit relates to genetically engi-

neered seed corn. Plaintiff asserts that the process employed to obtain the product involved in the present action is not relevant to the question of whether or not the patent-in-suit was infringed. Thus, even if there existed an attorney-client relationship between Burns Doane and Ciba NY, Plaintiff argues that the two matters are not substantially related.

Defendant Ciba Seeds has admitted that the process involved in the Sautter application was not used to produce the seed corn at issue. Nevertheless, Defendant believes that the process involved in the Sautter application will be a critical issue at trial. At the hearing, counsel for Defendant Ciba Seeds commented:

> So, we do agree that ultimately the plant that was transformed was—used a different gene gun. However, the whole issue is that [Ciba Seeds] was looking for alternative ways, which were not shown in [Plaintiff's] patent, of getting these genes into the plants, and the Sautter gun was just one of them. That is going to be an essential issue in this case.

(Tr., May 9, 1996, at 24.)

After consideration of the arguments of counsel, the court finds that the patent-at-issue does not bear a substantial relationship to the Sautter application. Thus, even if the court found that an attorney-client relationship existed between Burns Doane and Ciba NY, the two matters involved are not sufficiently similar to warrant disqualifying Burns Doane from representing Plaintiff.

## IV. CONCLUSION

For the reasons stated herein, Defendant Ciba Seeds' Motion to Disqualify the Law Firm of Burns, Doane, Swecker & Mathis will be denied.

An order in accordance with this memorandum opinion shall be filed.