**STRATAGENE**

v.

**INVITROGEN CORPORATION**

No. Civ.A.DKC 2001–3566.

United States District Court,
D. Maryland.

Oct. 7, 2002.

———

Richard James Oparil, Patton Boggs LLP, Washington, DC, Marc R. Labgold, Kevin Monroe Bell, Laura A. Donnelly, Patton Boggs LLP, McLean, VA, Plaintiff.

Michael Jay Strauss, Fulbright and Jaworski LLP, Washington, DC, Peter J. Davis, Morrison and Foerster LLP, McLean, VA, C. Kevin Speirs, Francis W. Wikstrom, David M. Bennion, Parsons Behle and Latimer, Salt Lake City, UT, for Defendant.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution in this patent infringement case are (1) the motion of Plaintiff Stratagene to disqualify Defendant Invitrogen Corporation's attorney Vanessa B. Pierce ("Pierce") and her law firm, Parsons, Behle & Latimer, LLP ("Parsons") as Defendant's counsel in the instant action; (2) the motion of Invitrogen Corporation ("Invitrogen") for leave to file five original declarations; and (3) the motion of Stratagene for leave to file an original declaration. The issues have been fully briefed and no hearing is deemed necessary. Local Rule 105.6. For reasons that follow, Plaintiff Stratagene's motion to disqualify attorney Pierce and the Parsons law firm will be granted, as will both parties' motions for leave to file original declarations.

## I. Background

On December 8, 1993, Plaintiff filed patent application serial number 08/164,290, entitled "Novel Polymerase Compositions and Uses Thereof," with the U.S. Patent and Trademark Office ("USPTO"). On February 16, 1994, Plaintiff filed a separate patent application, called a "continuation-in-part" of the December 8, 1993 application. The continuation-in-part, like the original, was based on inventions by Joseph A. Sorge and Rebecca L. Mullinax. The continuation-in-part application was entitled "Polymerase Compositions and Uses Thereof" and was assigned the patent application serial number 08/197,791 ("the '791 application"). Plaintiff prosecuted the continuation-in-part application, which ultimately resulted in the issuance of U.S. Patent No. 5,556,772 ("the '772 patent") on September 17, 1996. On September 18, 1995, Plaintiff filed another continuation application, which was given the serial number 08/529,767 ("the '767 application"). Plaintiff alleges that both the '791 and '767 continuation applications are derived from and share the text of the original application filed on December 8, 1993 and pertain to the same subject matter.

Plaintiff filed a complaint against Defendant on or about November 26, 2001 for alleged infringement of the '772 patent. Defendant filed a counterclaim against Plaintiff seeking a declaratory judgment of invalidity, unenforceability, noninfringement, and absence of liability with respect to the '772 patent.

In the course of the litigation over the '772 patent, Ronni L. Sherman ("Sherman"), Plaintiff's executive vice president and general counsel, attended part of the June 11, 2002 depositions of Stuart Hepburn and John Hughes, both of whom work for Defendant. During a break in Hepburn's deposition, Defendant's counsel, Vanessa B. Pierce, allegedly introduced herself to Sherman and mentioned that she had represented Plaintiff as a client when she worked with Paul Barker ("Barker") in the Palo Alto office of Finnegan, Henderson, Farabow, Garrett & Dunner, LLP ("Finnegan"). Barker and his firm have represented and continue to represent Plaintiff in many patent matters, including application numbers '791 (which later issued as the '772 patent) and '767. Plaintiff claims that Sherman immediately contacted Barker, who provided copies of relevant client correspondence, billing records, and attorney notes indicating Pierce's involvement in Stratagene's representation on the '767 application.

On or about June 17, 2002, Plaintiff moved to disqualify Pierce and the Parsons law firm pursuant to Rules 1.9 and 1.10 of the Maryland Rules of Professional Conduct ("MRPC") and Local Rule 704, which adopts the MRPC. Plaintiff concurrently filed, and the court granted, a mo-

tion to stay all further action in the case pending the resolution of this matter.

## II. Standard of Review

As aptly stated by Judge Andre Davis in *Zachair, Ltd. v. Driggs,* 965 F.Supp. 741, 750 (D.Md.1997):

> A motion to disqualify is a 'serious matter,' *Plant Genetic Systems [N.V. v. Ciba Seeds* ], 933 F.Supp. 514,] at 517 [ (M.D.N.C.1996) ], which must be decided on a case-by-case basis. *See Buckley v. Airshield Corp.,* 908 F.Supp. 299, 304 (D.Md.1995). This is so because two significant interests are implicated by a disqualification motion: 'the client's free choice of counsel and the maintenance of the highest ethical and professional standards in the legal community.' *Tessier [v. Plastic Surgery Specialists, Inc.*], 731 F.Supp. 724] at 729 [ (E.D.Va. 1990) ]; *Buckley,* 908 F.Supp. at 304. Nevertheless, 'the guiding principle in considering a motion to disqualify counsel is safeguarding the integrity of the court proceedings.' *Plant Genetic Systems,* 933 F.Supp. at 517; *see Hull v. Celanese Corporation,* 513 F.2d 568, 572 (2d Cir.1975)(finding that a party's free choice of counsel must yield to 'considerations of ethics which run to the very integrity of our judicial process.'). Thus, this court must not weigh the competing issues 'with hairsplitting nicety but, in the proper exercise of its supervisory power over the members of the bar and with a view of preventing an appearance of impropriety, [this Court] is to resolve all doubts in favor of disqualification.' *United States v. Clarkson,* 567 F.2d 270, 273 n. 3 (4th Cir.1977)(internal quotation marks and citations omitted); *Rogers v. Pittston Co.,* 800 F.Supp. 350, 353 (W.D.Va.1992); *Buckley,* 908 F.Supp. at 304.

## III. Analysis

### A. Attorney Vanessa B. Pierce

■ Under Local Rule 704, this court applies the MRPC as they have been adopted by the Maryland Court of Appeals. Rule 1.9 of the MRPC states as follows:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
>
> (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or (b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.

Application of this rule involves a two-step inquiry. First, the moving party must establish that an attorney-client relationship existed with the former client, and second, that the matter at issue in the former representation was the same or substantially related to that in the current action. *See, e.g., SuperGuide Corp. v. DirecTV Enterprises, Inc.,* 141 F.Supp.2d 616, 621 (W.D.N.C.2001).

The first step requires Stratagene to demonstrate that Pierce at one time had an attorney-client relationship with Stratagene. Invitrogen concedes that Pierce worked as an associate at Finnegan from October 1998 to March 2000 and that Plaintiff Stratagene was a client represented by Finnegan. There is a dispute between the parties, however, regarding the amount and nature of the work Pierce performed for Stratagene. Stratagene contends, citing Barker's declaration, that Pierce "represented" Plaintiff concerning the '767 application. Barker Decl. ¶¶ 3,4. In its motion to disqualify, Stratagene

provides one example of the alleged representation, quoting Pierce's January 31, 2000 billing entry which reads: "Prepare summary of pending claims; telephone conference with S. Wagner and R. Sherman regarding same." Paper no: 30.[1] Invitrogen however, contends that Pierce performed only some "discrete and limited work" for Stratagene and that whatever work she did perform pertained to the '767 application, which is not the patent at issue. Addressing the January 31, 2000 billing entry revealed by Stratagene, Invitrogen maintains that Pierce had simply performed a "mere administrative task" in summarizing the pending claims pertaining to the '767 patent application and performed no analysis of these claims.[2]

In *Buckley,* Judge Alexander Williams rejected a similar argument by a defendant's counsel that he should not be disqualified because the time he had worked on behalf of the plaintiff was "limited to updating legal research and preparing memoranda of law . . . ." *See* 908 F.Supp. at 301, 305. The court in *Buckley* concluded that an attorney-client relationship existed even though the attorney in question had never entered an appearance on behalf of the plaintiff, never consulted with the plaintiff, never attended a trial nor a deposition and never participated in settlement activities. *Id.* at 305–06. The court similarly concludes in the case at bar that an attorney-client relationship existed between Pierce and Stratagene during her time at Finnegan even if her work was limited to what Invitrogen characterizes as "administrative tasks." The court is satisfied that Pierce performed tasks on behalf of Stratagene in furtherance of its '767

patent application sufficient to establish an attorney-client relationship.

The second step of the inquiry reflects the notion that prior representation does not automatically cause disqualification; the two matters must be substantially related. *Id.* at 304. In determining whether a former and current matter are "substantially related," it is not necessary that the two representations involved the same operative facts "so long as there is a sufficient similarity of issue." *Id.* at 304–05 (citation omitted). The court's primary concern is whether there is a "reasonable probability that confidences were disclosed in the prior representation which could be used against the former client in the current litigation . . . ." *SuperGuide Corp.,* 141 F.Supp.2d at 622, *quoting Plant Genetic Sys.,* 933 F.Supp. at 518. The court must, therefore, examine the nature and scope of the prior and present representations and determine whether confidences might have been disclosed in the course of the prior representation which could be relevant to the present action. *See Buckley,* 908 F.Supp. at 304.

Stratagene alleges, citing Barker's declaration, that Pierce had unrestricted access to all of Finnegan's files containing attorney-client confidences regarding the '767 application. Barker Decl. ¶¶ 3,4. Stratagene argues that because the '767 continuation application derived from the original parent patent application, which also ultimately resulted in patent number '772, Pierce had access to information and attorney-client confidences relevant to the instant infringement claim regarding '772. Stratagene also alleges that Pierce discussed the case with other Fin-

---

1. Stratagene has submitted additional billing entries *in camera,* but, in accordance with a July 2, 2002 order, the court will not consider them.

2. Invitrogen notes, and the court recognizes, that Invitrogen is unable fully to address the first prong with respect to Pierce because it has not had access to the billing records and other documents filed by Stratagene *in camera* as Exhibits 1–3.

negan attorneys who were substantively involved in Stratagene's representation.

Invitrogen argues in response that although the specifications in the '772 patent and the '767 continuation application may derive from the same text of the original parent patent application, they are not both the "patent-in-suit," nor is '767 at issue at all in the instant case. Invitrogen bases this argument on the fact that the USPTO required Stratagene to pursue the claims which ultimately resulted in the '772 patent in a separate application from those in the '767 patent application. Invitrogen specifically cites the patent examiner's statement indicating that those claims are "independent and distinct" from each other. Paper no. 43, ex. 2. Invitrogen further argues that Stratagene has not demonstrated that Pierce obtained any information concerning the validity of the claims in the '772 patent. Invitrogen argues that it would indeed have been impossible for Pierce to access confidential information regarding the '772 patent because the standard practice at Finnegan after a patent had been issued was to remove any extraneous materials from the prosecution file, including all materials that were not part of the documents publicly available from the USPTO. Thus, by the time Pierce began working at Finnegan in October 1998, Invitrogen contends, Finnegan's file on the prosecution of the '772 patent contained no confidential information.

While Invitrogen is likely correct that Stratagene has not conclusively demonstrated that Pierce accessed confidential information regarding the '772 patent, "[n]o actual receipt of confidences must be shown; such a standard would place an unreasonable burden on the moving party." *Rogers*, 800 F.Supp. at 354. Further, even if Pierce did not have access to confidential information regarding the '772 patent, she unquestionably did have access to information regarding the '767 application

during her time at Finnegan. Resolution of this issue hinges, therefore, on whether confidences that might have been disclosed to Pierce regarding the '767 application could be relevant to the present action pertaining to the '772 patent.

The court concludes that potentially revealed confidences regarding the '767 application may indeed be relevant to the instant action concerning the '772 patent. Although the patent examiner issued a restriction requirement (also known as a requirement for division) directing Stratagene to pursue the claims that ultimately resulted in the '772 patent in a separate application from those in the '767 application, the requirement simply reflects USPTO's practice of "restricting" applications by category (product, process of making, and process of use). *See* 35 U.S.C. § 121; 37 C.F.R. § 1.141. The patent examiner here stated that the claims had "acquired a separate status in the art as a separate subject for inventive effect" and therefore required independent searches. Paper no. 43, ex. 2. The required division of claims based on category, however, does not mean that they are not "substantially related" for the purposes of MRPC 1.9(a). Indeed, the '772 patent and the '767 application are derived from the same original application. Specifically, the '767 application is a "continuation" of the original application that matured into the '772 patent.

A continuation is a "second application for the same invention claimed in a prior nonprovisional application and filed before the original becomes abandoned or patented." *Manual of Patent Examining Procedure* § 201.07 (8th ed. 2001) ("MPEP"). The MPEP requires that the "disclosure presented in the continuation must be the same as that of the original application; i.e., the continuation should not include anything which would constitute new matter if inserted in the original application."

*Id.* Thus, the '767 application and the '772 patent share the same exact disclosure, and confidential information about the '767 application could be relevant to the infringement and invalidity claims regarding the '772 patent. The possible relevance of information concerning the '767 application to the current '772 patent infringement case is demonstrated by Invitrogen's requests during discovery to obtain information and documents pertaining to the '767 application. Paper no. 30, ex. 7; paper no. 46, ex. B.

The court therefore finds that the '772 patent and the '767 continuation application are "substantially related" matters for the purposes of MRPC 1.9. Accordingly, Stratagene's motion to disqualify Vanessa B. Pierce from representing Invitrogen in this matter is granted.

### B. Law Firm of Parsons, Behle & Latimer

■ Stratagene has also moved to disqualify Pierce's law firm, Parsons, pursuant to MRPC 1.10(b). MRPC 1.10(b) states in pertinent part:

When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person unless:

(1) the newly associated lawyer has acquired from the former client no information protected by Rules 1.6 and 1.9(b) that is material to the matter; or

(2) the newly associated lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom. For purposes of this subparagraph, a lawyer in a firm will be deemed to have been screened from any participation in the matter if:

(A) the lawyer has been isolated from confidences, secrets, and material knowledge concerning the matter;

(B) the lawyer has been isolated from all contact with the client or any agent, officer or employee of the client and any witnesses for or against the client;

(C) the lawyer and the firm have been precluded from discussing with each other the matter and any information acquired from the client that is protected by Rules 1.6 and 1.9(b) and is material to the matter; and

(D) the firm has taken affirmative steps to accomplish the foregoing....

The comment to MRPC Rule 1.10(b) notes that the burden of proof regarding access to confidential information should rest upon the firm whose disqualification is sought. Invitrogen disputes this and also argues that Parsons need only demonstrate, at most, that Pierce did not *disclose* any confidential information to Parsons and/or Invitrogen, not that she received no such information while employed at Finnegan. Invitrogen's argument contradicts the simple language of MRPC 1.10(b) which states that Parsons must be disqualified "unless the newly associated lawyer has *acquired* from the former client no information protected by Rules 1.6 and 1.9(b) that is material to the matter." MRPC 1.10(b)(1) (emphasis added). Invitrogen is also clearly mistaken when it argues that it does not bear the burden of proof regarding Pierce's receipt of confidential information.

Applying MRPC 1.10(b)(1), the court finds that Invitrogen has not shown that Pierce received no confidential information from Stratagene while working at Finnegan. Paul Barker, Pierce's supervising attorney at Finnegan, stated in his declaration that Pierce "had full and unrestricted access to all of Finnegan's files that con-

tained attorney-client confidences" regarding the '767 application. Barker Decl. ¶ 4. Invitrogen has offered nothing to prove that Pierce did not make use of such access to confidential information.

The second exception to the imputation of disqualification rule does not apply here because Parsons clearly has not screened Pierce from participation in this case. Indeed, not only has Pierce not been screened from this matter, but she appears to have been heavily involved in preparing some of Invitrogen's witnesses for their depositions. Dep. of Lisa Filioppone, p. 11; Dep. of Mark Hood, p. 11.

Because Parsons has not sheltered itself from imputed disqualification in the manners described in Rule 1.10(b)(1) or (b)(2), Parsons must be disqualified from representing Invitrogen regarding the matters at issue in this case.[3]

## IV. Conclusion

For the foregoing reasons, the motion of Plaintiff Stratagene to disqualify Defendant Invitrogen's counsel Vanessa B. Pierce and the law firm of Parsons, Behle & Latimer is granted.

---

**3.** The court, however, denies Stratagene's request to block replacement counsel's access to materials prepared by Pierce and/or Parsons. Unlike the one case cited by Stratagene in support of this request, *Ag Gro Services Co. v. Sophia Land Co., Inc.,* 8 F.Supp.2d 495 (D.Md.1997), the facts of the instant case do not suggest behavior sufficiently deliberate and egregious to warrant denying Defendant's replacement counsel access to materials prepared by its predecessor.