Estate of John T. Harriott, M.D. v. Cent. Carolina Surgical Eye Assocs., P.A., 2015 NCBC 39.

STATE OF NORTH CAROLINA

GUILFORD COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 9982

Estate of JOHN T. HARRIOTT, M.D.,
deceased, by and through his legal
representatives, DOUGLAS EDWARD
HARRIOTT, PAUL JEFFREY
HARRIOTT, and BRANDY DALLAS
PRESSLEY INFINGER,

Plaintiff,

v.

CENTRAL CAROLINA SURGICAL EYE
ASSOCIATES, P.A., C. RICHARD
EPES, M.D., J. MARK McDANIEL, JR.,
BESSIE K. EPES and
SOUTHEASTERN CATARACT LASER
CENTER, PLLC,

Defendants.

ORDER ON DEFENDANTS' MOTION
TO DISQUALIFY PLAINTIFF'S
COUNSEL

{1}    **THIS MATTER** is before the Court upon Defendants C. Richard Epes, M.D. ("Dr. Epes") and Central Carolina Surgical Eye Associates, P.A.'s ("CCSEA") (collectively "Defendants") Motion to Disqualify Plaintiff's Counsel ("Motion to Disqualify") in the above-captioned matter.

{2}    **THE COURT**, having considered Defendants' Motion to Disqualify, the briefs in support of and in opposition to the Motion to Disqualify, and the evidence of record,[1] hereby **DENIES** Defendants' Motion to Disqualify.

*Hagan Davis Mangum Barrett & Langley, PLLC by Beth Langley for Plaintiff Estate of John T. Harriott, M.D., deceased, by and through his legal representatives, Douglas Edward Harriott, Paul Jeffrey Harriott, and Brandy Dallas Pressley Infinger.*

*Law Offices of Richard M. Greene by Richard M. Greene for Defendants C. Richard Epes, M.D. and Central Carolina Surgical Eye Associates, P.A.*

---

[1] Pursuant to North Carolina Business Court Rule 15.4(a), the Court elects to decide the Motion to Disqualify without hearing or oral arguments.  BCR 15.4(a) ("Motions shall be considered and decided by the Court on the pleadings, admissible evidence, the official court file, and briefs, without hearing or oral arguments, unless otherwise ordered by the Court.").

Bledsoe, Judge.

## I.

## PROCEDURAL HISTORY

{3}     Plaintiff John T. Harriott, M.D. ("Dr. Harriott" or "Plaintiff")[2] commenced this action by filing a Verified Complaint on October 27, 2014 and a Verified Amended Complaint on November 26, 2014 ("Amended Complaint").

{4}     On January 5, 2015, Plaintiff filed a Motion for Temporary Restraining Order, Preliminary Injunction and Appointment of Receiver, which this Court granted in its Amended Order on Plaintiff's Motion for Temporary Restraining Order, Appointment of Receiver, and Expedited Discovery and Notice of Hearing dated January 12, 2015.

{5}     On January 11, 2015, Defendants filed the Motion to Disqualify with supporting papers.

{6}     On February 25, 2015, this Court entered an Order Appointing Receiver in this case for the duration of this litigation or until otherwise ordered by this Court.

{7}     On March 5, 2015, Plaintiff filed a brief in opposition to Defendants' Motion to Disqualify along with supporting exhibits.

{8}     The time for additional briefing, arguments, and submissions has now expired and the Motion to Disqualify is ripe for resolution.

## II.

## BACKGROUND FACTS

{9}     The Court limits its recitation of the background to the facts and allegations that are relevant for purposes of resolving the present Motion to Disqualify.

{10}   CCSEA was an ophthalmological surgery practice engaged in business at 3312 Battleground Avenue in Greensboro, North Carolina and at various other locations around the State.  (Am. Compl. ¶ 11.)  CCSEA conducted business as

[2] Plaintiff John T. Harriott, M.D. died on March 5, 2015.  On April 2, 2015, this Court entered an Order granting Plaintiff's Motion for Substitution of Personal Representatives as Party-Plaintiffs in Place of Now Deceased Party-Plaintiff, whereby Douglas Edward Harriott, Paul Jeffrey Harriott, and Brandy Dallas Pressley Infinger were substituted as Party-Plaintiffs.

"Southeastern Eye Center," using this trade name in its operations. (Am. Compl. ¶¶ 12–13.)

{11} Dr. Epes was an owner, officer, and director of CCSEA. (Am. Compl. ¶ 15.)

{12} Dr. Harriott executed an employment contract with CCSEA that ended in 2010 when he was terminated. (Am. Compl. ¶ 20.)

{13} Dr. Harriott commenced an action in Forsyth County Superior Court against CCSEA for breach of his employment contract, and the jury awarded Dr. Harriott a verdict against CCSEA. (Am. Compl. ¶ 22–23.)

{14} On September 10, 2012, the Superior Court of Forsyth County entered judgment on the jury's verdict in favor of Dr. Harriott and against CCSEA in the amount of $1,835,084.30 (the "Judgment"). (Am. Compl. ¶ 24.)[3]

{15} Although Dr. Harriott attempted to execute on the Judgment, Plaintiff contends that it remains unsatisfied, in particular, because in or around May 2012, Dr. Epes created Southeastern Cataract Laser Center, PLLC ("SCLC"), and caused CCSEA to transfer all or substantially all of CCSEA's assets to SCLC. (Am. Compl. ¶¶ 25–27; Dr. Epes Aff. ¶ 14.) Dr. Epes is the sole owner of SCLC, and he and J. Mark McDaniel, Jr. ("Mr. McDaniel"), Dr. Epes' business partner, are SCLC's managers. (Am. Compl. ¶ 31; Dr. Epes Aff. ¶¶ 5–6.)

{16} According to Plaintiff, "SCLC has continued to operate at the same principal place of business as CCSEA under the trade name Southeastern Eye Center; SCLC utilizes many of the same key management staff as SCLC (including family members of Mr. McDaniel); and SCLC maintains CCSEA is no longer providing medical services." (Am. Compl. ¶ 42.)

{17} Plaintiff contends that the transfer of CCSEA's assets to SCLC was part of a scheme to avoid creditors and intended to hinder, defraud, and delay the collection of Dr. Harriott's Judgment. (Am. Compl. ¶ 35.)

{18} Plaintiff asks this Court for appropriate relief based on his claims against Defendants for breach of fiduciary duty/constructive fraud, piercing of corporate

---

[3] A copy of the Judgment is attached to Plaintiff's Amended Complaint as Exhibit A.

veil, successor liability as to SCLC, fraudulent transfer under N.C. Gen. Stat. § 39-23.1, *et seq.*, unfair trade practices, and constructive trust.

{19} Defendants filed the current Motion to Disqualify, arguing that Charles T. Hagan, Esq. ("Mr. Hagan") formerly represented them on matters related to this lawsuit, and now Mr. Hagan is currently a member of the law firm of Hagan Davis Mangum Barrett & Langley, PLLC (the "Firm"), which currently represents Plaintiff. (Defs.' Mot. Disqualify, pp. 1–2.) Defendants allege that from 1999 through 2002, Mr. Hagan served as corporate and business counsel for CCSEA, whereby Mr. Hagan represented CCSEA on the following matters:

  i.   consulted with and advised Dr. Epes to form SEC Acquisitions, Inc.;

  ii.  was the Incorporator of SEC Acquisitions, Inc.;

  iii. advised and prepared the documents to change the corporate name of SEC Acquisitions, Inc. to Southeastern Eye Management, Inc. ("SEM");

  iv.  consulted with and advised Dr. Epes and Mr. McDaniel with regard to a financing transaction wherein CCSEA and SEM would enter into a series of loan transactions wherein the proceeds would be used to pay off obligations of HUTA Leasing Company (a general partnership between former Defendant John D. Matthews, M.D., Mr. McDaniel, and Dr. Epes), HUTA Leasing, LLC (whose members were Mr. McDaniel and Dr. Epes), and SEC Investments, LLC (whose members were Mr. McDaniel and Dr. Epes);

  v.   consulted with and advised Dr. Epes and Mr. McDaniel with regard to changing the name of Southeastern Eye Surgeons, PLLC to Carolina Refractive Surgeons, PLLC;

  vi.  used "Southeastern Eye Center" in his communications to Dr. Epes and CCSEA;

  vii. encouraged and advised Dr. Epes to fragment his ownership in various businesses by the use of corporations, partnerships, and limited liability companies; and

  viii. never advised Dr. Epes or CCSEA that the creation of numerous companies for specific business ventures or purposes would pose any danger to CCSEA or Dr. Epes.

(Defs.' Mot. Disqualify, pp. 1–2; Dr. Epes Aff. ¶¶ 19–22.)

{20} Defendants contend that Mr. Hagan advised them between 1999 and 2002 to fragment the corporate structure of their businesses and that this advice relates to Defendants' defense against Plaintiff's effort to pierce the corporate veil of both CCSEA and SCLC in this action. Defendants argue that because the issues concerning Mr. Hagan's prior representation of CCSEA overlap with the issues regarding Defendants' liability in this lawsuit, the Firm should be disqualified from representing Plaintiff in this matter under North Carolina Rule of Professional Conduct 1.9(a) ("Rule 1.9(a)"). Defendants also argue that Mr. Hagan will likely be a necessary witness in their case to explain how and why they fragmented the corporate structure of various corporate entities, which further warrants the Firm's disqualification under North Carolina Rule of Professional Conduct 3.7 ("Rule 3.7").

{21} In response, Plaintiff maintains that the claims and issues in this case are centered on Defendants' actions to hinder, defraud, and delay payment of Plaintiff's Judgment arising out of the 2012 transfer of CCSEA's assets to the newly formed SCLC and that these issues are not the "same or substantially related" to the matters upon which Mr. Hagan formerly represented Defendants. Moreover, Plaintiff argues that Rule 3.7 explicitly allows Beth Langley ("Ms. Langley"), the Firm lawyer representing Plaintiff in this action, to represent Plaintiff even if Mr. Hagan, her law partner in the Firm, is likely to be called by Defendants as a witness at trial.

III.

ANALYSIS

**A. Legal Standard**

{22} "Decisions regarding whether to disqualify counsel are within the discretion of the trial judge and, absent an abuse of discretion, a trial judge's ruling on a motion to disqualify will not be disturbed on appeal." *Robinson & Lawing, LLP v. Sams*, 161 N.C. App. 338, 339, 587 S.E.2d 923, 925 (2003) (quoting *Travco Hotels v. Piedmont Natural Gas Co.*, 332 N.C. 288, 295, 420 S.E.2d 426, 430 (1992)). "'[A] motion to disqualify counsel . . . is not a referendum on the trustworthiness of

the counsel sought to be disqualified. It is, rather, a motion that should succeed or fail on the reasonableness of a client's perception that confidences it once shared with its lawyer are potentially available to its adversary.'" *Chemcraft Holdings Corp. v. Shayban*, 2006 NCBC 13 ¶ 34 (N.C. Super. Ct. Oct. 5, 2006), http://www.ncbusinesscourt.net/opinions/2006%20NCBC%2013.htm (alteration in original) (quoting *Healthnet, Inc. v. Health Net, Inc.*, 289 F. Supp. 2d 755, 763 (S.D. W. Va. 2003)).

{23}   Nevertheless, "[t]he drastic nature of disqualification requires that courts avoid overly-mechanical adherence to disciplinary canons at the expense of litigants' rights freely to choose their counsel; and that they always remain mindful of the opposing possibility of misuse of disqualification motions for strategic reasons." *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 146 (4th Cir. 1992) (citation omitted). Indeed, "[i]n order to avoid the potential for abuse, the Fourth Circuit has held that disqualification for violations of an ethical canon 'may not be rested on mere speculation that a chain of events whose occurrence theoretically could lead counsel to act counter to his client's interests might in fact occur.'" *Blaney v. Charlotte-Mecklenburg Hosp. Auth.*, 2011 U.S. Dist. LEXIS 103159, at *7 (W.D.N.C. Sept. 13, 2011) (quoting *Shaffer*, 966 F.2d at 145).

### B. Rule 1.9

{24}   Rule 1.9(a) provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." N.C. R. Prof'l Conduct 1.9(a).

{25}   To prevail on their Motion to Disqualify under Rule 1.9(a) here, Defendants must show:   (1) an attorney-client relationship existed between Defendants and a member of the Firm in a prior legal matter; (2) the current lawsuit concerns the same matter or a substantially related matter to the prior legal matter; and (3) Plaintiff's position is materially adverse to Defendants' interests in this case. *Ferguson v. DDP Pharmacy, Inc.*, 174 N.C. App. 532, 536,

621 S.E.2d 323, 327 (2005). If Defendants are able to carry this burden, the Firm is disqualified from representing Plaintiff by operation of N.C. R. Prof'l Conduct 1.10(a). *Id.* at 538, 621 S.E.2d at 328 (imputing the conflict of interest that existed between a firm's partner and his former client to the firm); N.C. R. Prof'l Conduct 1.10(a) ("While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9 . . . .").

{26} There is no dispute that Mr. Hagan and Defendants shared a prior attorney-client relationship,[4] Plaintiff's position is materially adverse to Defendants' interests in this case, and Defendants have not consented to the Firm's representation of Plaintiff. Accordingly, to succeed on their Motion to Disqualify, Defendants must show that the current lawsuit concerns the same matter or a substantially related matter to the prior legal matters in which Mr. Hagan represented Defendants.

{27} Matters are "substantially related" for purposes of Rule 1.9 "if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." N.C. R. Prof'l Conduct 1.9, cmt. 3. "The substantially related test requires a virtual congruence of issues, and the relationship between the issues in the prior [representation] must be patently clear." *Plant Genetic Sys., N.V. v. Ciba Seeds*, 933 F. Supp. 514, 518 (M.D.N.C. 1996) (internal quotation marks and citation omitted) (interpreting North Carolina Rules of Professional Conduct). "In the context of a motion to disqualify, substantially related 'has been interpreted to mean 'identical' or 'essentially the same.''" *Hepburn v. Workplace Benefits, LLC*, 2014 U.S. Dist. LEXIS 52628, at *7 (E.D.N.C. Apr. 15, 2014) (quoting *Plant Genetic Sys.*, 933 F. Supp. at 518) (applying North Carolina law). "[T]he concern is whether there is a reasonable probability that confidences were disclosed in the prior representation

---

[4] There is no evidence before the Court that any other lawyer in the Firm has represented either Defendant at any time.

which could be used against the former client in the current litigation." *Plant Genetic Sys.*, 933 F. Supp. at 518 (citing *In re Stokes*, 156 Bankr. 181, 187 (Bankr. E.D. Va. 1993) (applying North Carolina law)). However, "[i]nformation acquired in a prior representation may have been rendered obsolete by the passage of time, a circumstance that may be relevant in determining whether two representations are substantially related." N.C. R. Prof'l Conduct 1.9, cmt. 3.

{28} Based on its review of the facts presented, the Court concludes that the matters upon which Mr. Hagan represented Defendants from 1999 until 2002 while he was associated with his prior firm, Adams Kleemeier Hagan Hannah & Fouts PLLC ("Adams Kleemeier"), are not "the same or substantially related to" the issues in this case.

{29} First, the focus of Plaintiff's Complaint is the May 2012 allegedly fraudulent transfer between CCSEA and the newly formed SCLC and "Defendants' unfair and deceptive trade practices associated with their scheme to hinder, defraud and delay payment of Dr. Harriott's [September 2012] [J]udgment, and Dr. Epes' and Mr. McDaniel's breach of fiduciary duty to Dr. Harriott." (Pl.'s Resp. Defs.' Mot. Disqualify, p. 14.) Mr. Hagan ceased representing Defendants in 2002, ten (10) years before CCSEA participated in the allegedly fraudulent transfer that is the subject of Plaintiff's action. Defendants have not brought forward sufficient evidence to show that Mr. Hagan's advice, given a decade earlier, in a different context, and for a different purpose, is substantially related to the issues in this case involving Defendants' allegedly fraudulent efforts to avoid a judgment creditor.

{30} Further, records on file with the North Carolina Secretary of State demonstrate that Defendants established numerous related or interconnected business entities before Mr. Hagan began representing Defendants in 1999, establishing that Mr. Hagan's alleged advice to fragment Defendants' business entities was not the basis for their decisions to form at least some (if not all) of their multiple entities. (Pl.'s Resp. Defs.' Mot. Disqualify, p. 14, Ex. C.)

{31} Moreover, Plaintiff has offered evidence demonstrating that matters material to Mr. Hagan's purported 1999 – 2002 advice have substantially changed

since that time. For example, Plaintiff's evidence suggests that CCSEA's debt structure and debt facilities have changed, Dr. Epes and Mr. McDaniel have transferred their ownership interest in EMS Partners, LLC to their wives ("Mrs. Epes" and "Mrs. McDaniel"), Dr. Epes and Mr. McDaniel have paid themselves and their wives over $1.4 million dollars from CCSEA's and SCLC's bank accounts over the past three years, and HUTA Leasing Company, LLC has been administratively dissolved. (Pl.'s Resp. Defs.' Mot. Disqualify, pp. 10–11.)

{32}    Finally, Plaintiff's counsel has offered satisfactory evidence that neither she nor her Firm possesses any information concerning Mr. Hagan's representation of Defendants that could be used to Defendants' disadvantage. (Pl.'s Resp. Defs.' Mot. Disqualify, p. 3.) In particular, Mr. Hagan's previous firm, Adams Kleemeier, no longer exists, and Defendants' old client files kept at Adams Kleemeier were "closed" in 2002 and were not transferred to the Firm. (Pl.'s Resp. Defs.' Mot. Disqualify, p. 3.) Indeed, Plaintiff's evidence shows that the Firm has never had access to Defendants', or any of Defendants' related entities', client file materials and that no attorney at the Firm possesses confidential material information of Defendants. (Pl.'s Resp. Defs.' Mot. Disqualify, p. 3.) For these reasons, therefore, the Court finds that Rule 1.9(a) does not require the Firm's disqualification.

{33}    In addition, Rule 1.9(b) provides that "[a] lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client (1) whose interests are materially adverse to that person; and (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless the former client gives informed consent, confirmed in writing." N.C. R. Prof'l Conduct 1.9(b). Although Ms. Langley was a member of Adams Kleemeier at the time Mr. Hagan represented Defendants, Rule 1.9(b) does not require the Firm's disqualification because the Court has concluded that Mr. Hagan's prior representation of Defendants is not "the same or substantially related to" the issues in this case.

## C. Rule 3.7

{34}    Defendants also contend that Rule 3.7 requires the Firm's disqualification in this action.  The Court disagrees.

{35}    North Carolina Rule of Professional Conduct 3.7 provides:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

{36}    First, there is no evidence that Mr. Hagan has represented, or intends to represent, Plaintiff against Defendants.  As a result, Rule 3.7(a) has no application to this case.  In addition, our courts have made clear that, except in conflict of interest situations under Rules 1.7 and 1.9, a law firm's lawyers are not barred under Rule 3.7(b) from representing a client even when one partner in the law firm serves as a necessary witness at trial. *Cunningham v. Sams*, 161 N.C. App. 295, 300, 588 S.E.2d 484, 488 (2003); N.C. R. Prof'l Conduct 3.7, cmt. 5 ("Because the tribunal is not likely to be misled when a lawyer acts as advocate in a trial in which another lawyer in the lawyer's firm will testify as a necessary witness, paragraph (b) permits the lawyer to do so except in situations involving a conflict of interest."). Because, as Defendants acknowledge, Rules 1.7 and 1.9 do not preclude Ms. Langley and the Firm's other counsel of record from representing Plaintiff in this action, Rule 3.7(b) likewise does not require the Firm's disqualification.

## D. Appearance of Impropriety

{37}    Although not raised by Defendants, our courts have observed that an overarching consideration on a motion to disqualify is to "prevent even the appearance of impropriety and thus resolve any and all doubts in favor of disqualification." *Chemcraft*, 2006 NCBC 13 ¶ 34 (quotation omitted). The Court's "primary concern in preventing the appearance of impropriety is the client's perception of events," *Kingsdown, Inc. v. Hinshaw*, 2015 NCBC 27 ¶ 49 (N.C. Super. Ct. March 25, 2015), http://www.ncbusinesscourt.net/opinions/2015_NCBC_27.pdf (citation omitted), and Defendants' motion to disqualify "should succeed or fail on the reasonableness of [their] perception that confidences [they] once shared with [their] lawyer are potentially available to [their] adversary," *Chemcraft*, 2006 NCBC 13 ¶ 34.

{38}    Applying these principles here, it appears clear that Mr. Hagan provided only general corporate representation to Defendants in this case during a limited three-year period between 1999 and 2002. (Pl.'s Resp. Defs.' Mot. Disqualify, p. 10.) It is equally clear that Mr. Hagan's representation ended approximately ten years before SCLC was formed and the allegedly fraudulent transfer of CCSEA's assets to SCLC occurred – and it is this 2012 conduct that Plaintiff complains about in this litigation. (Pl.'s Resp. Defs.' Mot. Disqualify, p. 10.) Given the nature and scope of Mr. Hagan's general corporate advice to Defendants, which mostly consisted of counseling on the formation of business entities and the structuring of various unrelated loan transactions as described in Dr. Epes' own affidavit, and the fact that Plaintiff's claims are founded upon an allegedly fraudulent transfer to avoid a judgment that arose a decade after Mr. Hagan's representation of Defendants ended, the Court cannot conclude that Defendants have a reasonable perception that "confidences [they] once shared with [their] lawyer are potentially available to [their] adversary." *Chemcraft*, 2006 NCBC 13 ¶ 34. As a result, the Court does not find that an appearance of impropriety exists that precludes the Firm from representing Plaintiff against Defendants in this action.

IV.

CONCLUSION

{39} Accordingly, based on the foregoing, the Court concludes that disqualification of the Firm from representing Plaintiff against Defendants in this litigation is neither appropriate nor required.

{40} **WHEREFORE**, the Court hereby **DENIES** Defendants' Motion to Disqualify.

**SO ORDERED**, this the 28th day of April, 2015.